Roche vs. Pennington and others.

ROCHE, Respondent, vs. PENNINGTON and others, Appellants.

*March 9 — April 3, 1895.*

(1–3) *Agency: Authority to employ men: Taking risk of competency: Presumption: Evidence.* (4) *Improper remarks by counsel: Reversal of judgment.*

| 90 | 107 |
|----|-----|
| 94 | 258 |
| 90 | 107 |
| 112 | ³471 |
| 90 | 107 |
| 113 | ¹382 |
| 90 | 107 |
| 114 | ¹ 87 |
| 114 | ¹ 88 |
| 90 | 107 |
| 117 | ¹287 |

1. It was presumptively within the authority of a general agent in charge of a sawmill, upon employing a foreman and saw filer for one year, to agree to take the risk of the employee's competency to fill the position during that time.

2. Such an agreement was binding on the principals for whom the agent was acting, although in making it he said that *he* would take the risk.

3. In an action by the employee on such contract, one of the defendants was asked: "Did he [the agent] have any authority to make any contracts of employment outside of the ordinary and usual contracts of employment made in the usual course of business?" *Held*, that the question was properly excluded because leading and because propounding a mere question of law.

4. An improper remark by counsel in addressing the jury, if held improper by the trial court and then withdrawn by the counsel, is not ground for a reversal of the judgment unless it operated to the prejudice of the appellant.

APPEAL from a judgment of the circuit court for St. Croix county: E. B. BUNDY, Circuit Judge. *Affirmed.*

The plaintiff brought his action against the defendants, who carried on business under the name of *F. Pennington* in manufacturing lumber at their mill, to recover the sum of $700 and interest, under a contract by which he was to work for them as foreman and saw filer for the period of one year from April 1, 1890, to April 1, 1891; the defendants to pay him the sum of $1,000 and his board for such services,— for the first seven months at the rate of $100 per month, and for the last five months at the rate of $60 per month; said wages to be payable monthly. The complaint alleges that he entered upon his employment and worked

Roche vs. Pennington and others.

. therein until July 8, 1890, when the defendants discharged him without cause, although he was ready and willing and offered to fully perform his contract; that by reason of the premises he lost and was deprived of all profitable employment for the remainder of the year, to his damage in the sum of $700. The defendants admitted the making of the contract, and alleged that at the time the plaintiff represented to them that he was a competent filer, with sufficient experience and knowledge to enable him to file saws in their mill in a good and workmanlike manner, and, relying thereon, they hired him to do such work; that in fact he was utterly incompetent to perform the work of filer and foreman in said mill, and on the 8th of July, 1890, he voluntarily gave up his place, and they paid him in full for all services he had rendered under said contract. All other allegations in the complaint were denied.

At the trial, evidence on the part of the plaintiff was to the effect: That the contract was made with a Mr. Harper, who was the general manager of the defendants, and who hired and discharged hands. That after amount of compensation was agreed on the plaintiff said: "I don't like the looks of the mill very well, but if you will agree to get me what I want, and furnish me the help that is necessary, I will go and work for you; but I don't want to go down there and work for two or three months and then have you dissatisfied with me and throw me out of a job in the middle of the summer." He said: "I guess that will be all right. I think you will get along all right. I will give you all the help necessary." That he then told Harper: "I want you to understand distinctly, right now, I don't want to go to work for you unless you take all the responsibility upon yourself in regard to my filling the bill." That he said "he would take all chances on that," and the plaintiff said: "If that is the case, it is all right, and we will call it a bargain." That the plaintiff had told Harper that he had had no experi-

ence as a band-saw filer. The evidence tended to show that the plaintiff told Harper what his experience had been, and gave references which were consulted. That the plaintiff was discharged for incompetency. That he was willing and offered to perform the contract on his part, but the defendants discharged him.

After the plaintiff rested the defendants moved for a nonsuit on the ground that it was not shown that Harper, the defendants' agent, had authority to make the peculiar contract testified to by the plaintiff. The court denied the motion.

The evidence on the part of the defendants, by Mr. Harper, was to the defect that the plaintiff "did not inform me that he would not take the contract unless I took the entire responsibility of his being a good man;" and there was evidence, consisting of facts and circumstances, in support of both versions of the contract, in this respect. The defendants' counsel asked one of the defendants, while on the stand: "Did he [Harper] have any authority to make any contracts of employment outside of the ordinary and usual contracts of employment made in the usual course of business?" The court excluded the question.

The court submitted it to the jury whether the defendants agreed to hire the plaintiff upon the terms stated and take their own chances as to his competency, and instructed them that it was competent for defendants to make such a contract as the plaintiff claimed was made; that if they discharged him wrongfully, and without good and sufficient reason, he would be entitled to recover his compensation for the year, less what he had been able to earn after his discharge; that, if the contract was as claimed by the plaintiff, the defendants had no right to discharge him for incompetency, as long as he went on and did the best he could, though it was not what was needed in a person in his position; that, if there was no such contract, then the plaintiff

would be held to a reasonable degree of skill, such as men engaged in that business ordinarily possess. The court submitted two questions to be answered in connection with a general verdict: (1) Was such a contract as that testified to by the plaintiff entered into between him and A. A. Harper, acting as agent for the defendants? (2) Was the plaintiff, while in the employ of the defendants, competent to do the work for which he was engaged? The jury answered the first question in the affirmative, and failed to agree on an answer to the second, but found a general verdict for the plaintiff, assessing his damages at $818.40.

A motion for new trial was made upon the ground, among others, that the verdict was contrary to law and the evidence, and because counsel for the plaintiff made improper remarks to the jury in his address to them. These remarks were that "the defendants didn't have proper machinery for the plaintiff to work with, and then they kicked him out, and that is on a par with all the Stillwater lumbermen." The court ruled that the remark was improper, and counsel withdrew the remark, and no exception was taken. The motion for a new trial was denied, and the plaintiff had judgment for his damages and costs, from which the defendants appealed.

*Ray S. Reid*, for the appellants.

For the respondent there was a brief by *John W. Bashford* and *McGiffert & Wickwire*, and oral argument by *Mr. Bashford*.

PINNEY, J. 1. There was, we think, sufficient evidence, when the plaintiff rested, to go to the jury to show that the contract relied on, and found by the jury to have been made, was presumptively within the authority of the agent, Harper. The evidence tended to show that he was the general agent of the defendants in charge of and conducting their mill. The presumption is that he possessed the powers usual

Roche vs. Pennington and others.

and reasonably necessary to discharge the duties and carry on the business confided to him, such as are usually exercised by other similar agents under like circumstances. It was necessary to have some one as foreman and filer. What was a usual or reasonable contract in such a case,— there being no well-understood usage of which the court could take notice,— was a question of fact for the jury. Mechem, Agency, § 285; *Pickert v. Marston,* 68 Wis. 467.

But whatever defects may have existed in the plaintiff's case when the motion for a nonsuit was denied were supplied by subsequent proof (*Harriman v. Queen Ins. Co.* 49 Wis. 73); for it was shown that Harper was the general manager of the defendants, and one of the defendants testified that Harper "had charge there of all matters in relation to the mill; hired the men and discharged them. Mr. Harper ran the entire thing." He had, beyond question, authority to contract for the services of the plaintiff as foreman and filer. He made the contract in question after representations of the plaintiff, and references given him, as to his competency, and which, to some extent, Harper investigated. Was it beyond his authority, as a matter of law, to make the contract, because he agreed, under the circumstances stated, to take the risk of the plaintiff's competency to fill the position during one year,— the term of his employment? We think not. Harper stood for and in the place of the defendants, and must be held to have had a liberal and reasonable discretion as to the terms of the contract. The agency was a general one, and included all the necessary and usual means of executing it with effect; and, in the absence of any proof of usage, Harper had authority to make such contract with the plaintiff as, in the honest exercise of his discretion, he saw fit. Story, Agency, § 58, and note 2; Id. § 106. Appropriate and reasonable contracts were within the scope of his authority. "In general terms, it may be said that such an agent has implied power

to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way, and which the principal could and would usually do in like cases if present. Mechem, Agency, § 395; *Cannon v. Henry*, 78 Wis. 167; *Shelton v. Merchants' D. T. Co.* 59 N. Y. 262; *Nelson v. Hudson R. R. Co.* 48 N. Y. 498; *Williams v. Getty*, 72 Am. Dec. 758. We cannot say that in making the contract he exceeded the usual authority of general managers under similar circumstances. The strong presumption is that the contract was within, and not without, his authority. The burden of showing, in such a case as this, that the contract was unusual and unreasonable and was not within the authority of the general agent, was on the defendants. If there was an invariable, certain, and general usage on the subject of making such contracts, the law would imply that it should be observed; but, to be binding, it must be uniform and universal. 1 Am. & Eng. Ency. of Law, 354. Upon the question of what is usual and reasonable under such circumstances, the case is wholly destitute of proof. For these reasons, we think the instructions of the court to the jury were rightly given.

Error was assigned upon the alleged refusal of the court to give two instructions to the jury at the request of the defendants, but the record fails to show that any such instructions were requested. The objection that the obligation, if any, created by the agreement to take the risk of the plaintiff's competency, was personal to Harper and did not bind the defendants, by reason of the form of expression used, is without merit. Harper was acting, as was well understood, in a representative capacity and as the general manager of the defendants in making the contract.

2. The court properly excluded the question put to one of the defendants as to Harper's authority to make contracts. It was clearly leading, and, besides, instead of calling for facts, it propounded to the witness a mere question of law.

Casey vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

3. The jury found a general verdict for the plaintiff, and answered the question whether such a contract as that testified to by the plaintiff was entered into between him and Harper, acting as agent for the defendants, in the affirmative. This rendered an answer to the second question wholly immaterial and unnecessary.

4. The remark made by counsel for the plaintiff in his address to the jury, and which was objected to, was rightly held by the court to be improper, and counsel thereupon withdrew it. We do not think that there is any reason to believe that it operated to the prejudice of the defendants, and the incident furnishes no ground for a reversal of the judgment. *Smith v. Nippert,* 79 Wis. 139; *Dugan v. C., St. P., M. & O. R. Co.* 85 Wis. 609.

It follows from these views that, inasmuch as there was sufficient evidence to sustain the verdict, the motion for a new trial was rightly denied, and judgment was properly given for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.