ROBERT SKENE, Jr., Respondent, v. UNION CAS-UALTY AND SURETY COMPANY, Appellant.

St. Louis Court of Appeals, December 17, 1901.

1. **Contract: CONSTRUCTION OF: CORPORATION.** In the case at bar, under the provisions of section 7, article 2, of the by-laws of the company, Gaty had power to negotiate the contract with plaintiff but the contract could not be made binding on the corporation unless it was approved or ratified by the executive committee or the board of directors, and the subsequent contract was not reported to or approved by the executive committee or by the board of directors, and is therefore not binding on the corporation unless Gaty, as general manager, was clothed with apparent authority to make the

Skene v. Union Casualty and Surety Co.

contract, and the defendant, relying on this apparent authority entered into it without notice of his want of authority or notice of facts from which the inference of such notice might be drawn.

2. **Corporation: AUTHORITY OF SUPERINTENDENT OF.** The authority of the superintendent of a private corporation is presumptively limited to the usual and ordinary means of accomplishing the business entrusted to him.

3. ———: ———: **EVIDENCE.** And in the case at bar, the evidence in the case is that the power to make the contract was not conferred on Gaty by the act of the corporation, but on the contrary is, that it was reserved and lodged exclusively with the executive committee or board of directors.

4. ———: ———. The contract of plaintiff was an employment of him as superintendent or general manager of a separate and distinct department of defendant's insurance business—the individual accident department. The nature of plaintiff's employment constituted him a general agent of the defendant with "Power to do acts of a class."

5. ———: ———: **GENERAL AGENT OF CORPORATION: EMPLOYMENT OF: POWERS.** The employment of a general agent of a corporation is not an incident to the power of the superintendent but it is the peculiar office and duty of the board of directors as a body, or by a committee raised out of it, to select and employ all general officers and agents of the corporation.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

REVERSED.

STATEMENT OF THE CASE.

The suit is to recover damages for an alleged breach of contract of employment. The petition was in two counts. The first alleges that defendant agreed to pay plaintiff two thousand dollars salary and ten per cent on the profits realized for the first year, in its personal accident department, in consideration of the services of plaintiff in said department of defendant's insurance business; that the services for

the first year were rendered and the salary paid; that the services begun September 1, 1897, and for the first year ended September 1, 1898; that the profits made during this year in the personal accident department were twenty-five thousand dollars, and that ten per cent thereof (twenty-five hundred dollars) was due plaintiff on his contract, which defendant refused to pay.

The second count alleges that plaintiff has served defendant on the same contract and on the same terms from September 1, 1898, to April 1, 1899, when he was wrongfully discharged by the defendant; that after being discharged he offered his services to the defendant for the remainder of the year and was denied employment; but that thirteen hundred and thirty-three dollars and thirty-six cents of the salary of two thousand dollars per annum was paid, and that the balance of six hundred and sixty-five dollars and sixty-four cents was yet due as a salary. That the profits of the personal accident department of defendant's business from September 1, 1898 to April 1, 1899, were twelve thousand dollars, and that ten per cent thereof (twelve hundred dollars) was due plaintiff but that defendant refused to pay the same.

The answer was a general denial as to both counts. The evidence is that T. E. Gaty was the general superintendent of defendant company (an insurance corporation); that between Gaty and the plaintiff, correspondence was had in the summer of 1897, looking to the employment of plaintiff as superintendent of the personal accident insurance department of the defendant. In this correspondence, plaintiff frequently mentioned his willingness to accept a moderate salary if he would be given, in addition to the salary, a per cent of the profits of the business of the department he was to have in charge. On September 6, Gaty wrote plaintiff that he would submit the whole matter to the executive committee on August 10. On August 10, the matter was submitted to the ex-

ecutive committee and the committee took the following action:

"There was presented and read a letter from General Superintendent Gaty regarding the individual accident department of the company's business, attention being called to the fact that unless an increase in the volume written could be secured, that department of the business would continue, as it had been in the past, unprofitable. The communication stated that after a thorough discussion of the subject with the officers of the company, the conclusion had been reached that some first-class individual accident man should be employed to push this particular branch of the business, and that in accordance with this decision, he had communicated with Robert Skene, Jr., who was formerly connected with the American Accident Company of Louisville, concerning whom information had been obtained that he was a man of the highest integrity, as well as considerable ability in this particular line, and had offered him, subject to the approval of the committee, the position of superintendent of the individual accident department, at a salary of $2,000 per year, payable semimonthly. After consideration of the communication, it was resolved, on motion of Mr. Fusz, seconded by Mr. Lewis, that the action of the general superintendent in employing Robt. Skene, Jr., as superintendent of the individual accident department at a salary of $2,000 per annum, payable semimonthly, be approved, the employment of Mr. Skene, however, to be at the pleasure of the board."

Plaintiff was notified of this action by the following letter:

"St. Louis, August 10, 1897.

"Mr. Robert Skene, Jr.

　　Care Agency Mutual Life Insurance Co., of New York, Indianapolis, Ind.

"Dear Sir: I beg to acknowledge receipt of your es-

teemed favor of the ninth inst. relative to your employment by this company. The entire matter was submitted to the executive committee to-day, and they have agreed to employ you at a salary of $2,000 per year.

"The matter of contingent interest was not submitted for the reason that it is so difficult to reach any definite conclusion in this particular. The more we examine into it the more difficult the problem is to our understanding.

"In the matter of allowance for expense, the committee took into consideration the fact that we have increased our limit by $500 and thereby covered such contingencies.

"I shall leave the city to-morrow morning, but will be back here on the twenty-third inst. I have delayed my departure as long as possible in order to close up the present matter under discussion. I shall be pleased to see you on the twenty-third of August and discuss the individual accident business in its entirety.

"We shall expect you to take charge September 1. We of course will pay your expenses to and from Indianapolis on the twenty-third inst.

"In the matter of term contract, I can not see why you should have any apprehension on this subject. This company is in the market for a first-class individual accident man, and if you are competent of filling the position satisfactorily we are certainly not going to place ourselves in the same position as we were prior to your employment; and so long as your services are satisfactory you can rest assured of permanent employment.

"I presume that you will desire to give your present employers at least fifteen days' notice, as is customary in severing your connection with another company.

"If there are any further details with which you desire to be acquainted in connection with the individual accident department, Mr. Clardy will answer any communication during my absence."

The following letter was also put in evidence:

"St. Louis, August 6, 1897.

"Mr. Robert Skene, Jr.,
        Care Mutual Life Ins. Co., of New York,
                Indianapolis, Ind.

"Dear Sir: I beg to acknowledge receipt of your favor of the fifth inst. relative to appointment under discussion.

"The matter was discussed very thoroughly this morning by President Ellerbe, Secretary Clardy and myself. We concluded that if you were the right man for the place this company could not afford to hold out for a matter of $500 per year.

"In your communication, however, you seem to intimate that a term contract would be made, for you state that if you did not succeed as an accident man we could use you as an adjuster or bookkeeper. From the president down to the smallest salaried clerk in this office, no one has a term contract, nor would the directors of this company consider for a moment such a contract with any one in the employ of the company.

" We are pleased with your frank statement of your position and I will submit the matter to the executive committee at its next meeting, Tuesday, August 10.

"As to the matter of contingent interest on the profits of the personal accident department, that is a matter that can be arranged later, and I am satisfied the executive committee of this company would offer no objection to an arrangement of a contingent interest based on the profits of the expired business written by this company. You understand, of course, that your ability will speak for itself. If you have the confidence that you state you have in that ability, you certainly expect to succeed with us, and, therefore, I take it you would not care for a term contract. As stated above,

however, the matter of a term contract is out of the question, for the executive committee would never approve it.

"Will you kindly give me, by return mail, information as to how soon you can sever your connection with the present company, in order that I may have this information before me when the matter is submitted to the executive committee on Tuesday next. We of course would expect you to begin with us not later than September 1.

"Yours very truly,
"THEO. E. GATY, Gen'l Supt."

Plaintiff testified that after he came to St. Louis he had a conversation with Gaty in which his contingent interest in the profits was discussed and Gaty said: "Well what do you want on that contingent interest?" to which witness answered, "Well if I make you ten thousand dollars you will be willing to pay me one thousand dollars and consider it contingent" to which Gaty replied, "Certainly." Then witness said, "Let us make it ten per cent contingent on the profits of the business of the department," to which Gaty replied, "That is satisfactory." This conversation occurred August 23, 1897, according to plaintiff's evidence. Plaintiff testified that the profits of the personal accident department of defendant's business from September 1, 1897, to September 1, 1898, were over twenty-five thousand dollars, and from September, 1898, to April 1, 1899, were over twelve thousand dollars. He testified also the amount he was able to earn, in other employment, after he was discharged by defendant, from April to September, 1899.

On the part of defendant, Gaty testified that in July, 1897, plaintiff came to St. Louis and he had a conversation with him in his office in respect to employing him; that he informed him then and there that if a contract was made with him it would have to be approved by the executive committee of the company. O. K. Clardy, secretary of the com-

pany, corroborated this statement of Gaty's.    Gaty further testified that he was not in St. Louis on August 23, 1897; that he did not on that day nor any other day agree to pay plaintiff ten per cent or any other per cent on the profits of the personal accident department.

Defendant's evidence tended further to prove that it was impossible to estimate the profits on individual accident insurance during the period that plaintiff was employed by defendant, for the reason that a number of the policies issued during that period were outstanding, and losses on these outstanding policies were impossible to estimate, and that from the best estimate that could be made, the profits, during the whole period of plaintiff's employment in the personal accident department, did not exceed four thousand dollars.    Defendant offered in evidence the following by-laws:

Article 6 of the by-laws provides: "All contracts made by this corporation shall be signed by both the president and secretary.

"Sec. 7, art. 2.    The board of directors shall appoint a general manager, who shall have supervision and control of all general agents and agents of the corporation.    It shall be his duty to employ all inspectors, general agents and agents, and to fix their salaries, compensation, commission or fees, and to prepare and execute on behalf of the company all contracts therefor.    He shall have supervision of the different kinds or classes of insurance, and shall prepare the proper forms of application for policies, and policies.    The action of the general manager in the matter of contracts with general agents and agents, for salaries, compensation, commission or fees, and the forms of application, shall, however, be submitted to and approved by the executive committee or board of directors before the same shall become obligations of the company or go into effect."

Plaintiff testified that he was not familiar with the by-laws of the company and did not read the foregoing by-laws

for more than a year after he was in defendant's employ.

At the close of plaintiff's evidence, and again at the close of all the evidence, defendant offered a demurrer to the evidence, which was denied by the court, to which ruling defendant saved exceptions. The case went to the jury on the evidence and under instructions given by the court a verdict was returned assessing plaintiff's damages, on the first count, at twenty-two hundred dollars, and on the second at three hundred and seventy-five dollars. In due time plaintiff filed its motion for a new trial which was by the court overruled, whereupon defendant appealed.

*Percy Werner* and *W. E. Fisse* of counsel with appellant.

"It is a well settled principle that persons dealing with corporations through their agents are bound at their peril to take notice that the agent is duly empowered in the premises, and are chargeable with knowledge of his power to bind the corporation," etc., citing Thompson Com. on Corp., secs. 5973, 5974, 5975; Story on Agency, sec. 265; Sandford v. McArthur, 18 B. Mon., 411; McCurd v. Rogers, 21 Wis. 197. In the present case, as the testimony disclosed, a by-law of the defendant company strictly defined the authority of Gaty as general superintendent. In all his dealings with the plaintiff, Gaty strictly followed this by-law. He withdrew altogether after reaching a point where terms of an acceptable contract had been obtained that he might submit to the executive committee, and informed plaintiff that the actual entry into the contract rested with the executive committee. As stated in 4 Thompson on Corporations, sec. 4884: "The central principle which governs this subject, and which is often lost sight of, is that one man can never be made civilly answerable for the acts of another man unless he has (1) clothed him with power to do those acts, or (2) clothed him with power to do

acts which include these acts; or (3) allowed him, through negligence or otherwise, to possess, in the face of the public, the appearance of such power.   In every case the power really emanates from the principal."   The rule as stated by Judge Thompson, finds abundant illustration in our own reports. A recent example is the case of Newland Hotel Co. v. Lowe Furniture Co., 73 Mo. App. 135, at page 138, where it is said:  "The strictness with which at common law proof of a contract was required to correspond with the statements of a complaint founded upon such contract, was a leading characteristic of the system.   That this strictness has not been relaxed is evidenced by the decision of the Supreme Court of this State in the recent case of Huston v. Tyler, 140 Mo. 252, where it was held that a plaintiff who declares upon an alleged express contract of the defendant to procure and deliver to him a promissory note for $2,500, should be confined to the facts specifically assigned in the petition as his grounds of action."   The court further held in this case that the plaintiff "having declared upon what is an express contract or warranty as to the genuineness of certain signatures, he was thereby precluded from relying upon an implied warranty to the same effect."

*Wm. C. & Jas. C. Jones* for respondent.

(1)   "It is well settled that where persons deal with an officer of a corporation who assumes authority to act in the premises, and no want of authority or irregularity is brought to the knowledge of the party so dealing with the corporation, and nothing occurs to excite suspicion of such defect, the corporation is bound although the agent exceeded his powers. (Merchants' Bank v. State Bank, 10 Wall. 644.)" Lungstrass v. Ger. Ins. Co., 57 Mo. 107.   (2)   "If any officer of an insurance company assumes to possess certain powers,

and the nature of his employment justifies the assumption of authority, and the party dealing with him has no notice of want of the claimed authority, and there is nothing to warrant an inference to the contrary, the company is bound, even though he had no such power as claimed. Accordingly, we conclude that the plaintiff's rights were in no way affected by the secret limitations in the authority of Brady as general agent." Burdick v. Ins. Co., 77 Mo. 629; Taylor v. Ins. Co., 49 Mo. 380; Breckinridge v. Ins. Co., 87 Mo. 70. (3) "McCarthy's authority to act is to be presumed (says our Supreme Court) from the high official position which he held —being, as the evidence shows, at the time of the transaction put in issue by the pleadings, superior or president and procurator, or treasurer of defendant, etc. . . . No proof of any special authority was required. The doctrine has been long since justly exploded, that every act to be performed by the agent of a corporation has to be authenticated by its corporate seal." Washington Ins. Co. v. St. Mary's, 52 Mo. 480. See generally on this subject: Suddath v. Lime Co., 79 Mo. App. 585; May v. Jarvis-Conkling, 138 Mo. 275; Costigan v. Trans. Co., 38 Mo. 225; State v. Silva, 130 Mo. 460. (4) The question for determination in this case is not, as defendant seemed and still seems to think, what was Gaty's actual authority, but rather what was his apparent authority. "As respects the mutual rights and dealings of the principal and agent, the actual authority may govern; but as respects the liability of the principal to third persons, for the acts and contracts of the agent, it is the apparent authority which controls. . . . If the principal leads third persons, acting reasonably, and in good faith, to believe that his agent possesses a certain authority, then, as to them, he does possess it." Mechem's Agcy., sec. 707; Johnson v. Hurley, 115 Mo. 513; Mitchum v. Dunlap, 98 Mo. 418; McLachen v. Banker, 64 Mo. App. 524.

BLAND, P. J.—I.   Under the provisions of section 7, article 2, of the by-laws, Gaty had power to negotiate the contract with plaintiff but the contract could not be made binding on the corporation unless it was approved or ratified by the executive committee or the board of directors.   The contract for the salary of two thousand dollars was approved by the executive committee.   The supplemental contract claimed to have been subsequently made, to-wit, on August 23, 1897, for the contingent interest in profits and on which a recovery was had, was not reported to or approved by the executive committee or by the board of directors and is, therefore, not binding on the corporation unless Gaty, as general manager, was clothed with apparent authority to make the contract, and the defendant relying on his apparent authority entered into it without notice of his want of authority or notice of facts from which the inference of such notice might be drawn.   Breckinridge v. The American Central Insurance Company, 87 Mo. 62; Washington Mutual Fire Insurance Co. v. St. Mary's Seminary, 52 Mo. 480; Van Cleave v. Union Cas. & S. Co., 82 Mo. App. 668; Kaes v. Lime Co., 71 Mo. App. 101; Nicholson v. Golden, 27 Mo. App. 132.

The authority of the superintendent of a private corporation is presumptively limited to the usual and ordinary means of accomplishing the business entrusted to him.   Roche v. Pennington, 90 Wis. 107; Williams v. Getty, 31 Pa. St. 461.   He is not the *alter ego* of the corporation, and third persons dealing with him, to bind the corporation, must show that his act was "directly and intentionally conferred by the voluntary act of the principal" or that the power which he exercised was "reasonably necessary and proper to carry into effect the main powers conferred and were not known to plaintiff to be prohibited," or that the "power exercised was added to the general power conferred by usage and custom" and was in contemplation at the time Gaty was appointed superintend-

ent, or that the act was ratified by the corporation after it had full knowledge of the fact. Mechem on Agents, sec. 282.

The evidence in the case is that the power to make the contract was not conferred on Gaty by the act of the corporation, but on the contrary is, that it was reserved and lodged exclusively with the executive committee or board of directors. The contract of plaintiff was an employment of him as superintendent or general manager of a separate and distinct department of defendant's insurance business—the individual accident department. The nature of the plaintiff's employment constituted him a general agent of the defendant with "power to do acts of a class." Cross v. A., T. & S. F. R. R. Co., 141 Mo. 1. c. 147.

The employment of a general agent of a corporation is not an incident to the power of the superintendent, but it is the peculiar office and duty of the board of directors as a body, or by a committee raised out of it, to select and employ all general officers and agents of the corporation. Besch v. Western Carriage Co., 36 Mo. App. 1. c. 336. No custom to the contrary was proven at the trial and there is no pretense that the defendant ratified the agreement made by Gaty (if such an agreement was made), to give plaintiff an additional compensation out of the profits of the individual accident insurance department. There is, therefore, an utter want of evidence to establish the fact that Gaty was authorized to make the contract.

II. In Gaty's letter of August 6, 1897, he informed the plaintiff that he would submit the whole matter to the executive committee on August 10, and that he thought the committee would not object to a contingent interest in the profits of expired business. On August 10, he wrote him that, "The entire matter was submitted to the executive committee to-day, and they have agreed to employ you at a salary of two thousand dollars per annum. The matter of contingent interest was not submitted for the reason that it is so difficult

to reach any definite conclusion in this particular.   The more we examine into it the more difficult the problem is to our understanding." By these two letters, plaintiff was informed that the whole matter, about which he and Gaty had had correspondence, had been submitted to the executive committee and that the matter of contingent interest was so difficult of comprehension that it was not taken up by the committee, and that the committee and not Gaty, had employed him at a salary of two thousand dollars per annum.   Gaty neither employed plaintiff in the first instance nor assumed the authority to do so, and it is strange that plaintiff, after notice that he had been employed by the executive committee, should go to Gaty for a supplemental contract instead of the executive committee; and the inference is irresistible that he had information that the power to contract in this particular matter was lodged with the executive committee and not Gaty.

The demurrer to the evidence, after the close of all the evidence, should have been given, wherefore, the judgment is reversed.   Judge *Goode,* concurs; Judge *Barclay* dissents.