PARR and another, Respondents, vs. NORTHERN ELECTRICAL MANUFACTURING COMPANY, Appellant.

*February 25—March 21, 1903.*

*Contracts: Authority of agent: Burden of proof: Apparent authority: Court and jury: Evidence: Sales: Approval: "Satisfaction" of vendee: Conditional acceptance.*

1. In an action on a contract made with defendant's alleged agent, the burden is upon the plaintiff to prove, not only the fact of agency, but also that the agent's authority was sufficiently extensive to authorize him to bind defendant by the contract which he assumed to make.

2. The fact that a person was superintendent of the shop of a manufacturing corporation is not sufficient of itself, without proof of custom or usage, to justify a holding, as matter of law, that he had apparent authority to purchase or contract for the manufacture of important machinery to be used in the shop.

3. Whether a shop superintendent had such apparent authority in a particular case by reason of the way in which the business of the corporation was conducted, is a question for the jury, unless all the facts are undisputed and the inferences of fact therefrom are such that but one conclusion can be reached.

4. Where, in an action on a contract made with defendant's agent, plaintiffs introduced evidence of circumstances from which they claimed the conclusion should be drawn that defendant's officers either did know or should have known of the agent's acts, defendant was entitled to prove what the agent's powers actually were and that its officers had no knowledge of the contract with plaintiffs.

5. Where by the terms of an order for a machine it is to be subject to the approval of the person ordering and not to be accepted unless it operates satisfactorily, it need not be accepted if he is really and in good faith dissatisfied with its operation, even though it might be shown that it in fact did good work.

6. Upon receipt of plaintiffs' bill for a machine made for defendant, the latter claimed that by the terms of the order for the machine the cost was not to exceed a smaller sum, and stated that a bill for that sum, if presented, would be paid. *Held*, a conditional acceptance, only, of the machine, of no effect if plaintiffs failed to comply with the condition.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action on contract to recover the purchase price of a piece of machinery known as a "gang die," constructed by the plaintiffs for use in the defendant's shop. The complaint alleges that the plaintiffs constructed the die at the defendant's request, at the agreed price of forty cents per hour for the labor put thereon, and a reasonable compensation for the material used therein, amounting in all to $278.14. The answer denied the material allegations of the complaint.

It appeared upon the trial, without dispute, that in November, 1900, the plaintiffs were copartners operating a machine shop in Madison, and that the defendant was a corporation manufacturing electrical machinery in the same city, and that one Duncan was superintendent of this shop. The plaintiffs' evidence tended to show that early in November, 1900, the plaintiff *Parr* was called to the defendant's shop by Duncan,

who told him that he wanted him to figure on a gang die for use in the defendant's shop; that *Parr* looked over the machine which had been in use at the shop, and that Duncan then asked the price of a new machine such as was wanted, and *Parr* told him he could fix no price, but would do the work for forty cents an hour, and that Duncan desired him to make a plan of the machine; that *Parr* thereafter made a plan and showed it to Duncan, and Duncan approved it and again wished to know the cost, and *Parr* again told him that he could not fix the price but would work for forty cents an hour thereon, and that Duncan told him to go ahead; that the understanding was that the machine was to operate satisfactorily; that the plaintiffs immediately ordered some steel and other necessary materials for the machine; that some days afterwards the plaintiffs received from the defendant the following written order:

"Madison, Wis., 11–5–'00.                    No. 6648.
"Ford & Parr, City.

"M. A.   Please furnish *Northern Electrical Mfg. Co.,* at Madison, Wis., via C. & N. W. Ry., the following materials at the prices herein named:

"One gang die as per our drawing No. e2195 herewith. Price to be 40 cts. per hour, total cost not to exceed $100.00.

"Die to be subject to our approval and not to be accepted unless it operates satisfactorily.

                    "Northern Electrical Mfg. Co.,
                         "By A. O. Fox, Treasurer;"

that this order was not received until some days after its date, and about the middle of November, and that the material had then been received by the plaintiffs, and that work on the machine commenced about the time the written order was received; that *Parr* immediately telephoned to Mr. Duncan, and told him of the receipt of the order, and that he could not accept the terms therein, and that Duncan replied that he would come and see about it; that Duncan came to plaintiffs' shop on the next day, and finally told *Parr* to make the die

regardless of the limitation in the order; that the plaintiffs then proceeded to make the machine, and that Duncan came over every week to see the progress thereof, and gave directions as to details; that afterwards the following letter was received by the plaintiffs from Duncan at about its date:

"1–22–'01.

"Parr & Kroncke, City.

"*Gentlemen:* Replying to yours of January 21 would say that it will be all right to make the fillets on the larger size shown on your templet. This is a fillet of 1.32 radius. You can therefore make the die accordingly. This is to confirm our telephone message of this morning.

"Very truly,
"NORTHERN ELECTRICAL MANUFACTURING CO.
"F. B. DUNCAN, Superintendent;"

that when the machine was completed the plaintiffs took it to the defendant's shop and it was tried; that defects in its operation were found, and, after taking it back and forth several times, it was finally left at the defendant's shop in good condition, so that it would do good work, and that a bill was presented to the defendant for $278.14; that immediately after the presentation of the bill the plaintiffs received by mail the following letter from the defendant:

"6–1–'01.

"Parr & Kroncke, City.

"*Gentlemen:* We are in receipt of your invoice dated May 31, for $278.14, covering labor and material on gang die furnished us on our order 6648. We are very much surprised to note the charge. By reference to our order you will note that it states price to be forty cents per hour, total cost not to exceed $100.00. We presume the party who rendered the bill was not familiar with the terms of the order, and we therefore request that you render us a correct invoice, upon receipt of which we will be pleased to pass same to your credit.

"Yours truly,
"NORTHERN ELECTRICAL CO.,
"By A. O. Fox, Vice Prest. and Mgr."

There was also evidence to the effect that Duncan gave general orders around the defendant's shop and employed men to work therein; that one Drohan, who succeeded Duncan as superintendent of defendant's shop in May, 1901, told the plaintiff *Kroncke,* when the bill was presented, that the die had been accepted; that the defendant's officers refused to pay the bill as rendered.

At the close of the plaintiffs' evidence, the defendant moved that a verdict for the defendant be directed on the ground that no authority to make a contract by Duncan had been shown. This motion was overruled by the court in the following terms:

"I think the relationship of the party dealing with the plaintiffs, as shown by the facts and circumstances of the case, the authority by him assumed concerning the matter from beginning to end, the surrounding facts showing that it was at the home office and shop, and the action of the company in relation to his conduct demand that the motion be overruled."

The testimony for the defendant tended to show that the die did not do good work and was never accepted; that upon the presentation of the bill the defendant's responsible officers offered to pay the plaintiffs $100 for the die, and at the same time stated that it was not satisfactory, but the plaintiffs refused the offer. The defendant also offered in evidence the written contract made between it and Duncan constituting Duncan superintendent of the shop, which contract defined Duncan's duties as such superintendent, but gave him no power to purchase or contract for machinery. This contract was ruled out by the court, on the ground that the facts and circumstances which came to the plaintiffs' knowledge must determine the question of Duncan's authority. The defendant also offered to prove that the die did not operate satisfactorily to its officers, but this testimony was also ruled out. The defendant also offered to prove that the responsible officers of the company had no knowledge that Duncan had as-

sumed to make a contract with the plaintiffs for the construction of the die at forty cents an hour, but this testimony was excluded. The defendant also offered a copy of a requisition made by Mr. Duncan upon the storekeeper of the defendant company in the usual course of the defendant's business, as follows:

*"Requisition.*

"Dept. Mfg. No. 4115.
"Wanted account Mfg. Advice No. —— Date 11–5, 189—.
"Instructions:

Requisition must state where Articles are to be used and must be sent to storekeeper for endorsement before being signed by applicant.

"P. O. Number. 1 gang die per drawing.
No. E2195.
From Parr & Ford.
Price 40c. per hour. Not to exceed $100.00 total.
Die to be subject to our approval.

"[Signed] F. B. D.

"Storekeeper's Endorsement ————

"Approved NORTHERN ELECTRICAL MFG. CO.
"A. O. F."

Upon objection this paper was also excluded. It further appeared that Duncan left the employ of the defendant in May, 1901, and he was not called as a witness.

At the close of the evidence the defendant renewed its motion to direct a verdict, but the same was overruled. A special verdict was demanded by the defendant, and the following questions were prepared therefor:

"(1) Was there an agreement entered into and made between the plaintiffs, as copartners, and the defendant company, whereby the plaintiffs were to construct and furnish the material for the gang die of the kind and size as described in the testimony? (2) Was it a part of such agreement that the defendant company was to pay the plaintiffs for the construction of such gang die at the rate of 40 cents per hour for the necessary labor to construct it? (3) Was it a part of such agreement that the defendant company was to pay the plaint-

iffs for the material necessarily required to construct such die? (4) Was it understood and agreed by the parties to such agreement that the die was to be subject to the approval of the defendant company? (5) Was it understood and agreed that the die was not to be accepted by the defendant company unless it operated satisfactorily? (6) Did the die constructed by the plaintiffs for the defendant pursuant to the arrangement made between the parties operate satisfactorily? (7) Was the die actually approved and accepted by the defendant company?"

The court thereupon directed that each of the first five of said questions be answered in the affirmative, on the ground that there was no dispute in the evidence, and no exception seems to have been taken by either party to this ruling. The court thereupon submitted the last two questions to the jury, and in substance charged the jury, with reference to the first question, that if they found that the die operated satisfactorily then their answer would be "Yes," and if not then their answer would be "No"; and as to the second question, if they found that the company had approved and accepted the die as satisfactory under the contract, then their answer would be "Yes," but if they found to the contrary then their answer would be "No." The jury answered both questions which were submitted to them in the affirmative. A motion to set aside the verdict and for a new trial was overruled, and judgment was rendered for the plaintiffs for $290.67 and costs; and the defendant appeals.

For the appellant there was a brief by *Sanborn, Luse & Powell,* and oral argument by *John B. Sanborn.* As to the construction of the clause "not to be accepted unless it operates satisfactorily," they cited Mechem, Sales, § 664; *Singerly v. Thayer,* 108 Pa. St. 291, 2 Atl. 230; *McCormick H. M. Co. v. Chesrown,* 33 Minn. 32, 21 N. W. 846; *U. S. Electric F. A. Co. v. Big Rapids,* 78 Mich. 67, 43 N. W. 1030; *Plano Mfg. Co. v. Ellis,* 68 Mich. 101, 35 N. W. 841; *Campbell P. Co. v. Thorp,* 36 Fed. 414; *Manny v. Glendinning,*

15 Wis. 50; *Exhaust V. Co. v. C., M. & St. P. R. Co.* 66 Wis. 218; *Bannon v. C. Aultman & Co.* 80 Wis. 307.

For the respondents there was a brief by *H. W. Chynoweth,* and oral argument by *Vroman Mason* and *Mr. Chynoweth.* They contended that the contract made with Duncan binds the company.    21 Am. & Eng. Ency. of Law (2d ed.) 855; *Costello v. Ten Eycke,* 86 Mich. 348; *Van Etta v. Evenson,* 28 Wis. 33, 37; *Pratt v. Oshkosh M. Co.* 89 Wis. 406; *Cannon v. Henry,* 78 Wis. 167; *Heald v. Hendy,* 89 Cal. 632; *Peck v. Dexter S. P. & P. Co.* 164 N. Y. 127; *Roche v. Pennington,* 90 Wis. 107; *Shepherd v. Mil. G. L. Co.* 11 Wis. 234, 237; *Ladd v. Hildebrant,* 27 Wis. 135, 144; *McDermott v. Jackson,* 97 Wis. 64; Mechem, Agency, § 105; *Gulick v. Grover,* 33 N. J. Law, 463.    The die operated satisfactorily and was approved and accepted.    Under such a provision as that in this contract, "that which the law will say a contracting party ought in reason to be satisfied with, that it will say he is satisfied with." *Gearty v. New York,* 171 N. Y. 61, 72; *Hawkins v. Graham,* 149 Mass. 284; *Keeler v. Clifford,* 165 Ill. 544, 46 N. E. 248; *Folliard v. Wallace,* 2 Johns. 395; *Duplex S. B. Co. v. Garden,* 101 N. Y. 387; *Hummel v. Stern,* 36 N. Y. Supp. 443; *Clark v. Rice,* 46 Mich. 308, 9 N. W. 427; *Richison v. Mead,* 11 S. D. 639, 80 N. W. 132.

Winslow, J.  The contract upon which the plaintiffs claim to recover was made with an assumed agent.  There is no legal presumption that an agency exists, in the absence of proof, hence it was necessary for the plaintiffs to prove, not only the fact of agency, but also the fact that the agent's authority was sufficiently extensive to authorize him to bind the principal by the contract which he assumed to make.  This might be done by showing express authority given by the principal to the agent to make such contracts, or by showing that the principal had invested the agent with apparent authority to make such contracts, upon the faith of which apparent au-

thority the plaintiffs acted, or by showing that the principal ratified the act of the agent with full knowledge of the facts. It was not claimed that express authority had been given or that there had been ratification by the principal in the present case, but reliance was placed upon facts which it is claimed show that the defendant had invested Duncan with apparent or implied authority to make the contract. These facts were, in brief, that Duncan was superintendent of the shop; that he had his office in the general office rooms of the company; that he employed men in the shop; that he assumed to make the contract in question; that he gave directions as to the construction of the machine, both personally and by telephone from the company's office; that he wrote a letter upon the letter head of the company, and signed with the defendant's corporate name, giving directions as to details. There was an entire absence of direct evidence that any of the defendant's responsible officers actually had knowledge of Duncan's dealings with the plaintiffs, except so far as it may be inferred from the written order of November 5th, signed by the treasurer, Mr. Fox, that it was then understood that there had been negotiations by some one with the plaintiffs on the basis of payment at the rate of forty cents per hour. This letter, however, contains a distinct notice to the plaintiffs that the defendant either knew of no contract by which forty cents an hour was to be paid for the machine, or repudiated such a contract if any one had assumed to make it. It appears that this order was received at about the time work was commenced on the machine (whether just before or just after is not established), and that the plaintiffs refused to proceed with the work under it.

These are believed to be the only material facts having any bearing upon the question of implied or apparent authority. Upon these facts the trial court ruled, as matter of law, that authority was shown, and this is really the main question in the case. It will be noted that there was no proof of general

custom or usage, nor was there any proof that Duncan had ever assumed to make such contracts before with the knowledge or approval of the company. The claim is made, in support of the ruling below, that, from the simple fact that Duncan was superintendent of the shop, authority to contract for machinery to be used in the shop might or must be presumed; and *Cannon v. Henry,* 78 Wis. 167, 47 N. W. 186, *Pratt v. Oshkosh M. Co.* 89 Wis. 406, 62 N. W. 84, and *Roche v. Pennington,* 90 Wis. 107, 62 N. W. 946, were relied on in support of this contention. It is well understood that every delegation of power carries with it the authority to do all those things which are reasonably necessary and proper to carry into effect the main powers conferred, and which are not forbidden, and that secret instructions cannot affect such apparent powers to the detriment of third persons who have dealt with the agent on the basis of his apparent authority. Mechem, Agency, §§ 279, 280. The question is whether the power to purchase or contract for the manufacture of important machinery to be used in a shop is, as matter of law, a reasonably necessary and proper incident to the power of a mere shop superintendent. We do not feel that this question can be answered affirmatively. The cases above cited do not sustain the proposition, nor do any cases to which we have been referred. One who bears the title of "general manager" of a business (as in *Roche v. Pennington, supra*) may be well held to have very large powers. Such a title implies to any mind far more than that of "superintendent" of a shop. We think manufacturers in general would be surprised to learn that their shop superintendents had the power to bind them by purchases of expensive machinery at their will. Possibly it is capable of proof that such is the custom and usage generally, but, as before stated, no such proof was made in this case. We reach the conclusion, as before stated, that the fact that Duncan was the superintendent of defendant's shop is not sufficient to justify the court in holding, as a matter of law, that

he had apparent authority to contract for the die in question. But the fact that he was superintendent was of course proper to be shown as bearing on the question of apparent authority, and if it were supplemented by other facts showing the conduct of the principal in the matter, and if such facts, taken together, show that the principal has so conducted his business, either through negligence or by positive acts, in such manner as to justify the belief on the part of a third person of reasonable prudence that the agent has the authority which he has assumed to exercise, and he acts on such belief so inspired, then the principal is bound. *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375. The question whether such a state of facts exists is a question for the jury, unless all the facts be undisputed and the inferences of fact therefrom such that but one conclusion can be reached.

It is said in this case that there was no dispute about the facts, and hence that it was a question for the court alone, but we cannot agree with the contention. While there was no serious dispute as to the circumstances, we cannot regard the case as one where the inferences of fact from the circumstances shown were such that reasonable minds could come to but one conclusion, and this is the final test upon such questions. *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 80 N. W. 1020.

This brings us to the rulings of the court excluding evidence offered by the defendant. The plaintiffs having offered proof of circumstances from which they claim that the conclusion should be drawn that the officers of the company either did know or should have known of the acts of Duncan, the defendant offered to show what Duncan's powers actually were under his contract; also the fact that the defendant's officers had no knowledge of Duncan's assumed contract with the plaintiffs; also the fact that Duncan drew and signed a requisition on the storekeeper of the company for the die, which stated that it was to cost not exceeding $100. All of

this testimony was ruled out.   We think these rulings were erroneous.   All these facts, if they could be shown, had a bearing on the question whether the defendant had any actual knowledge of Duncan's assumption of power.   It is true that the defendant might be held, even in the absence of actual knowledge, if it were shown that such lack of knowledge was the result of negligence, and so the fact of lack of actual knowledge would not be controlling; but, inasmuch as the tendency of the plaintiffs' testimony was to justify an inference of actual knowledge, the defendant was entitled to meet that claim by showing to the contrary, even though the jury might, in the final outcome, decide that it was negligent in not having such knowledge.

It is admitted by the plaintiffs that the contract was that the die should operate satisfactorily.   The only meaning which can be logically attributed to this contract is that the machine was to operate satisfactorily to the defendant.   There was a serious conflict in the evidence as to whether the die did or could do good work.   The respondents seem to claim that, if they could prove by the preponderance of the evidence that the machine in fact did good work, the contract has been fulfilled.   This is not the law in this state.   When such a contract is made, the article must be, in fact, satisfactory to the purchaser, or he is not bound to take it.   His dissatisfaction must not be capricious or mercenary, nor result from a dishonest design to be dissatisfied in any event.   It must be real and in good faith, but, if these requirements be satisfied, he is not bound to take the article.   *Exhaust V. Co. v. C., M. & St. P. R. Co.* 66 Wis. 218, 28 N. W. 343; *Warder, B. & G. Co. v. Whitish,* 77 Wis. 430, 46 N. W. 540.   The defendant offered to prove that it was not satisfied with the die, and also asked for an instruction embodying the law substantially as above stated; but both offers were rejected.   Both of the rulings were erroneous.

The jury found that the die was approved and accepted by

the defendant company. This finding was based largely upon the letter of Mr. Fox, dated June 1, 1901, in which he states, in substance, that if a bill for $100 be rendered it will be paid. The defendant requested an instruction upon this issue to the effect that an acceptance, under the impression that the contract was different from that claimed by the plaintiffs, only operated as a conditional acceptance, and was of no ef-' fect if the plaintiffs refused to comply with the condition mentioned. We think this instruction should have been given. There can be no doubt that a conditional acceptance may be made, and that it will not constitute a binding acceptance if the condition be not complied with, and this was the substance of the instruction requested.

*By the Court.*—Judgment reversed, and action remanded for a new trial.