SILENT AUTOMATIC BURNER COMPANY OF MILWAUKEE, Respondent, vs. SILENT AUTOMATIC CORPORATION, Appellant.

*December 8, 1933—March 6, 1934.*

344

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *J. G. Hardgrove,* all of Milwaukee.

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish, F. C. John,* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

The following opinion was filed January 9, 1934:

FAIRCHILD, J.   The principal point made against the judgment entered below and a controlling one is that the respondent agreed to invest and maintain a sufficient un-

impaired working capital in an amount sufficient to insure the proper conduct of the business growing out of and contemplated by the agreement, and that, should such capital become impaired in appellant's judgment to a point detrimental to the proper conduct of the business, the appellant might forthwith cancel the agreement.

As the undisputed evidence shows that in the honest judgment of the appellant the respondent did permit its capital to become impaired to an extent authorizing the termination of the agreement, that is the only proposition to be considered. The contract in this respect committed the matter to the judgment of the appellant. There appears to be no dispute as to the propriety or the binding effect of such a stipulation, it being understood that the requirements by appellant of the respondent cannot be capricious or mercenary and must move from an honest design to have the business established on the basis contemplated by the parties as expressed in their agreement. *Exhaust Ventilator Co. v. Chicago, M. & St. P. R. Co.* 66 Wis. 218, 28 N. W. 343; *Gray v. Central R. Co.* 11 Hun, 70; *Warder, Bushnell & Glessner Co. v. Whitish,* 77 Wis. 430, 46 N. W. 540; *Parr v. Northern Electrical Mfg. Co.* 117 Wis. 278, 93 N. W. 1099; *Lieberman v. Weil,* 141 Wis. 635, 124 N. W. 262.

A brief review of the evidence bearing upon the right to terminate the contract for cause shows the original investment of $1,500, an additional contribution of $350, and a claim of an additional amount by reason of a salary charge in favor of one of the officers of respondent. From this evidence it appears that as early as December following the signing of the contract there was on the part of the respondent some indifference to the meaning of certain clauses of the contract directly related to the establishing of the business and the proper conduct thereof contemplated by the contract. On January 16, 1928, the president of respondent wrote appellant that after two and one-half months of effort on his part he was "positively sure something must

be done to put this burner across" and asked the assistance of the appellant. An exchange of correspondence followed in which questions were asked by the appellant as to whether a sales manager was employed, how many men they had on their sales force, and what plan of work was being followed as to canvassing and securing prospects. Harry DeBoer, a brother of the president, who had invested $1,000 in the company, was communicated with by the appellant by a letter written January 26th. Mr. DeBoer did not answer this letter until February 15th, and in his answer reviewed to some extent the difficulties of starting a new business and further said:

"Your Mr. Vivian called on me twice. It was his duty, of course, to try to improve the sales at this office. He suggested that we go out and hire some salesmen, train them and send them out. This is exactly what we tried to do from the very beginning and found that the operating expenses were greater than the net returns.

"We have since this time let every one of them go and my brother has put forth all his effort, which is considerable, and now has a number of deals about ready to close.

"I believe a healthy manner of expanding is to do so as the volume of business done, warrants. I feel sure if you will let my brother work out his problem, in the end you will have a substantial and worthy representative.

"Personally, I do not desire to put any more money into the business until I see it on a profit-paying basis."

The evidence shows that Harry DeBoer had started the enterprise with the idea of having his brother, Monte, manage it. There are a number of incidents unnecessary to detail, which show the development of friction between respondent and appellant. But few of the burners were being sold. Respondent urged that it was the wrong time of the year, but followed the course outlined in the letter of February 15th and, in the opinion of appellant, of not aggressively pursuing the merchandising of the oil burners. The criticisms directed against the respondent's management by

appellant were numerous, but all related to or were caused by the lack of sufficient funds to maintain an effective organization, to provide the business with a factory-trained service man between February 23d and the 1st of April, and to provide the necessary equipment and tools. On March 8th respondent was advised by letter that they were pursuing a course of "attempting an impossibility and following out a plan of doing business that can only result in difficulty for yourself, and you should readily appreciate that you cannot, improperly equipped as you are, render the desired satisfaction to purchasers of Silent Automatic." And in the same letter was a protest against the respondent continuing with the sale of burners through enlisting a plumber, and concluded by saying:

"We trust that your good judgment will prevail in this instance and that you will demonstrate your sincerity to properly pursue the sale of the Silent Automatic by immediately placing yourself in a position to do so."

The events immediately following this letter sustain the appellant's contention of want of ability on the part of respondent corporation to provide an organization. The president of respondent told a representative of the appellant, one James L. O'Brien, that he could not do the things demanded because of lack of money. O'Brien testified:

"I told him that I thought that it was very foolish for them to attempt to carry on in a city like Milwaukee unless they had at least five thousand dollars of liquid capital. He said to me on that that his brother was not going to put another cent into the business; he had put all he proposed to put into it."

There is other uncontradicted testimony of similar import. Respondent, however, contends that the answer of the jury to the effect that respondent did not fail to invest and maintain a sufficient unimpaired working capital, is sustained, and directs our attention to letters recommending sales plans and offers of assistance and efforts to co-operate

with respondent, and letters of respondent tending to show the difficulties present, arising out of conditions created previous to entering into the contract; but this testimony does not serve the purposes claimed, nor is there any testimony tending to show that appellant in canceling the contract was not acting in good faith.

Some significance is attached to the fact that the president of respondent talked with the president of appellant, described in respondent's brief as follows:

"Mr. DeBoer was still indignant over the tactics of Mr. Vivian and he told Mr. Tant that he was a little surprised that he should get such a deal from a large firm of that kind. Mr. Tant then replied: 'Mr. DeBoer, I will look into the matter, look it over. You have been misrepresented.' He put his hand on DeBoer's shoulder and said: 'Forget all about it. Go along as in the past.' "

The notice of cancellation followed within a few days after that conversation. This evidence does not disclose anything which amounts to a modification of the contract entered into between the parties. It is in no sense an acquiescence in or approval of the manner of conducting the business by respondent. At most it would be but a promise to investigate the circumstances out of which a dispute had arisen, and that in the meantime respondent might continue. There is no conflict in the evidence giving rise to a jury question.

Under this state of the evidence, we must hold that the evidence shows a basis for the conclusion reached by appellant to cancel the agreement because of the condition of respondent's capital; that the controlling question is one of law and that appellant was entitled to a directed verdict in its favor.

*By the Court.*—Judgment reversed. Cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on March 6, 1934.