Jones, J.
 

 At the close of the plaintiff’s evidence the defendant moved for a directed verdict. The motion was overruled. A similar motion was
 
 *510
 
 made at the close of the entire evidence, and that motion was also overruled. The defendant company maintains that there was no evidence tending to prove negligence on its part, and that error intervened in the overruling of these motions for nonsuit. Counsel opposing the direction of a non-suit rely upon what they term a “scintilla” of evidence to support their case. It would be well to discard the use of that term and employ the more common-sense rule announced by this court in many oases during the last half century. The textbooks uniformly declare that the scintilla rule has been abandoned by most of the courts. One of the principal lexicographers defines the term “scintilla” as an iota, a tittle, a glimmer or a trace; another, that it is a “minute particle, an atom.” A pursuit of these shadowy definitions may sometimes lead into the realm of speculation or conjecture, or into a verdict based on mere possibilities. This no court permits. An eminent member of this court realized this. In
 
 Nelson Business College Co.
 
 v.
 
 Lloyd,
 
 60 Ohio St., 448, at page 450, 54 N. E., 471, at page 473, 46 L. R. A., 314, 71 Am. St. Rep., 729, Minshall, J., said:
 

 “The so-called ‘scintilla rule,’ frequently applied as a stigma to the practice that requires the case to be submitted to the jury when there .is any evidence to support the plaintiff’s case,
 
 is better calculated to confuse than enlighten the mind.”
 
 Italics ours.
 

 In view of the extremely obscure definitions of the term it is highly proper that this court should announce a rule for the guidance of the trial and appellate courts. It is obvious from the numerous
 
 *511
 
 , eases appearing in this court that there is no standard employed by the trial courts whereby a nonsuit may be directed. Everyone will concede that there is a division line between the functions of the court and jury; and there is no reason why such a standard should not apply to criminal as well as civil cases. Surely, in the former, no court should permit a case to be submitted to the jury if the state should rely upon merely a tittle, a glimmer, a minute particle, or an atom of evidence in support of the guilt of the accused. Upon this phase of the case the rule should be that evidence tendered upon every material fact necessary to be proven should not only be substantial in character, but should have a substantial probative value, supplying proof of such fact. If the fact relied upon has neither substantial weight nor value, and proof thereof is necessary, it is the court’s function to so declare.
 

 It is well known that in Ohio the syllabus is the law of the case. However, with a single exception, to which we will hereafter refer, the term “scintilla” has never appeared in our syllabi. In commenting upon the term, one of our textbooks thus alludes to it:
 

 “There was an old phrase that ‘a mere scintilla of evidence’ was sufficient; but this has been abandoned by most courts.” 5 Wigmore’s Evidence (‘2 Ed.), 2494.
 

 Another speaks of the rule as follows: “The scintilla rule itself has now been exploded in most jurisdictions.” 26 Euling Case Law, 1070. In the recent case of
 
 A. B. Small Co.
 
 v.
 
 Lamborn & Co.,
 
 266 U. S., 248, 45 S. C., 300, decided March 2, 1925,
 
 *512
 
 Mr. Justice ‘Van Devanter, delivering the unanimous opinion of the United States Supreme Court, said of the phrase now under discussion:
 

 “The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others.”
 

 The Ohio case to which we have referred, and which has employed this shadowy and illusive term beyond reasonable lengths, is
 
 Clark
 
 v.
 
 McFarland,
 
 99 Ohio St., 100, 124 N. E., 164. That was a case involving a contest of a probated will. The statute, the legislative mandate, had made the order of probate
 
 prima facie
 
 evidence of the will’s execution and validity. Yet, notwithstanding that fact, this court applied the scintilla rule to that case. It thus made a scintilla overcome
 
 prima facie
 
 evidence, which the Legislature had stipulated should attach to the order of probate.
 

 Mr. Edson R. Sunderland, of the law school of the University of Michigan, in a comprehensive article dealing with the scintilla rule, 18 Michigan Law Review, page 46, after alluding to the fact that it was seldom followed by the modern courts, said:
 

 “Such being the principle underlying the scintilla rule and the state of the law regarding it, it is rather interesting and surprising to find the Supreme Court of Ohio, in an opinion published in September of the present year, standing pat on the scintilla rule in its crudest form. In
 
 Clark
 
 v.
 
 McFarland
 
 (Ohio, 1918) it appeared that a will
 
 *513
 
 had been admitted to probate by the order of the proper court. This order was by statute declared to be
 
 prima facie
 
 evidence of the due execution and validity of the will. * * * On appeal the judgment was reversed on the g'round that a mere scintilla of evidence was enough to send the case to the jury even in the face of an order of probate declared by statute to be
 
 prima facie
 
 proof of validity.”
 

 Adverting to the fact that this court, by that decision, reversed the two prior decisions of the Court of Appeals of this state, Mr. Sunderland concludes:
 

 “Evidently the Ohio Supreme Court feels irrevocably committed to this all but obsolete doctrine.”
 

 Whatever reason for the employment of the term may have formerly existed in the early jurisprudence of this state, there is no reason for its existence under our present legislation. Formerly the trial court was not shackled by legislation, but could grant new trials
 
 ad libitum
 
 on the weight of the evidence. Since 1898, that power of the trial court has been curtailed by Section 11577, General Code, whereby but one new trial may be granted on the weight of the evidence. Having once exercised this power, the trial court now is powerless to grant another trial, but, under the so-called scintilla rule, is compelled to render judgment where a scintilla has been offered, even though the testimony adduced by the other side has completely overwhelmed it.
 

 In view of the doubtful results obtained by the present application of the scintilla rule, by
 
 *514
 
 which, trial courts may be guided, the minority of this court, Marshall, C. J., and Jones and Kinkade, JJ., feel constrained to reject the term in its entirety and employ the more common-sense rule heretofore indicated.
 

 Was there evidence of a substantial character having a probative value, tending to show that the box of explosive caps had been taken from the mill and hauled to the dump by the employe of the defendant? No witness gave explicit testimony tending to prove that this box of explosive caps was in the load of rubbish hauled from the mill and dumped by this employe. Proof thereof rests upon circumstantial evidence, and upon rational inferences which may be drawn by men of ordinary reason and fairness from the facts and circumstances testified to. If an inference is necessary to sustain a verdict, it lies within the province of the court to determine whether different minds could reasonably arrive at different conclusions in raising such inference. If so, it becomes a question of fact for the jury; otherwise a question of law for the court. The law established by the decisions of this court is that where negligence depends upon a variety of circumstances over which different minds may reasonably arrive at different conclusions as to whether negligence exists, the court should not direct a verdict.
 
 Cincinnati Ry. Co.
 
 v.
 
 Snell,
 
 54 Ohio St., 197, 43 N. E., 207, 32 L. R. A., 276. Naturally, the corollary, must necessarily be true, that, if different minds should reasonably arrive at no other conclusion than that of the nonexistence of defendant’s negligence, a verdict of nonsuit should be directed.
 
 *515
 
 This rule is substantially sanctioned by Day, C. J., in
 
 B. & O. Rd. Co.
 
 v.
 
 Whittaker, 24
 
 Ohio St., 642, 651, and carried in the syllabi in the following cases:
 
 C., C. & C. Rd. Co.
 
 v.
 
 Crawford, Admr.,
 
 24 Ohio St., 631, 15 Am. Rep., 633, and
 
 M. & C. Ry. Co.
 
 v.
 
 Picksley,
 
 24 Ohio St., 654.
 

 It may be conceded that the trial court has a cluty, though often a difficult one, to perform. However, the same duty rests upon the reviewing courts. If proof of a material fact necessary to establish negligence rests upon an inference only, and such inference is a rational one, which can reasonably be arrived at from the facts and circumstances testified to, the link in the chain of proof is supplied. Was there any testimony in the instant case tending to establish negligence upon the part of the defendant? Or, stating it in another form, could the jury draw a rational inference from the facts and circumstances actually proven that negligence of the defendant existed? Testimony was introduced by the plaintiff that, in the operation of defendant’s mill, almost every conceivable foreign substance was taken from the bales of paper, and cast .aside and placed in receptacles, which, with the general rubbish of the mill, were hauled and dumped partly upon the premises where the plaintiff picked up> the box of explosive caps. The boy testified that upon the day he was injured an employe of the mill dumped a load of rubbish at the edge of and in the highway, and that he saw bleach cans “on top of the other stuff;” that within 15 or 20 minutes later he picked up this box of explosives in the wagon track, at the point in the highway where this
 
 *516
 
 rubbish, was dumped. We all know that circumstantial evidence may have a very hig-h. value even in criminal cases. What could have a stronger probative value than these circumstances testified to, connecting- the defendant’s employe with the placement of this rubbish and the finding of the box of explosives at the bottom of the dumped load?
 

 The insistence of counsel for plaintiff in error rests upon the fact that it was not shown that this particular box was brought from the mill, and that since it was found in the highway it was possible that it was left there by some other agency. However, the facts and circumstances proven are such that reasonable minds could arrive at the conclusion that this box came from the mill and was dumped into Cemetery road by an employe of the defendant. Indeed, it might be more rational to arrive at this conclusion than any other. The circumstances strongly support it. There was testimony indicating that explosions occurred in the mill, and testimony that the box was not observed in the highway before the employe unloaded the rubbish, 15 or 20 minutes before the accident. We do not think the trial court erred in refusing to direct a verdict in favor of the defendant.
 

 The incident concerning the alleged misconduct of the jury occurred in the courtroom during the progress of the trial. This was developed near the close of the trial. Thereupon the defendant moved the court to withdraw a juror and that the jury be discharged from consideration of the case. There does not appear to be any attempt at con
 
 *517
 
 cealment of this incident by any one, nor any effort made on behalf of the plaintiff to induce the conversation. So far as the juror is concerned, all that she did was to ask that she see the boy’s hand again, and make the remark that “he has two fingers.” Previous to this time, during the course of the trial, the infant had exhibited his hand to the jury, and his mother testified fully as to the character of these injuries. The juror obtained no knowledge other than that she had obtained in the jury box. It is very probable that the facts she gleaned from this short conversation did not influence her verdict, since, as a juror, she obtained the full knowledge of them on the trial. The court specifically cautioned the jury in its charge that any conversation had with the mother concerning the injury should not be permitted to affect their verdict, and that they were to disregard the incident entirely.
 

 We do not think that the alleged misconduct was of such a substantial character as to cause a mistrial, and therefore we cannot say that prejudicial error intervened in this feature of the case.
 

 As in other cases recently presented to this court, counsel for plaintiff in error urged that the trial court erred in charging the jury on the issue of contributory negligence. In this case the defendant not only pleaded a general denial, but further alleged that the infant’s injuries were caused solely by his own negligence.. Upon this issue the trial court substantially gave an instruction in conformity to the first and second propositions of the syllabus in
 
 B. & O. Rd. Co.
 
 v.
 
 Whitacre,
 
 35 Ohio St., 627. In its answer the defendant had charged
 
 *518
 
 the infant with negligence, and the record discloses that the defendant produced evidence tending to show contributory negligence. This phase of the case has been fully passed upon and decided* by this court in
 
 Bradley
 
 v.
 
 Cleveland Railroad Co., ante,
 
 35, 146 N. E., 805.
 

 We find no error committed by the trial court in its admission of testimony tending to prove that explosions occurred in the mill prior to the day when the boy was injured.
 

 The judgment of the 'Court of Appeals is affirmed.
 

 Judgment affirmed,.
 

 Day, Allen and Kinkade, JJ., concur.
 

 Matthias, J., concurs in the judgment.