## PHILLIPS v MOORE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12865.  Decided May 29, 1933

M. C. Harrison, Cleveland, and Winfield Worline, Cleveland, for plaintiff in error.

McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant in error.

## OPINION

By McGILL, J.

At the trial, Dr. Jones testified, and the defendant, being called for cross-examination, also admitted that the "fluctuation test" is the accepted method of detecting and locating pus. This test is made by applying the first finger of each hand, a sufficient distance apart, in the suspected area, and by the feel the pus can be readily located.

The defendant admitted not only that this "fluctuation test" was the accepted and approved method of detecting pus, but also claimed that it would disclose the existence of pus.

The defendant testified that he applied this test each and every day that he visited the plaintiff, and that on no occasion did this test disclose any pus pocket or fluctuation or localization of pus. If the defendant made the test as he claims, he was following the usual and approved practice, but the sister of the plaintiff testified that she was present each time that defendant visited the plaintiff and that the defendant did not make any such tests at any time. Clearly this raised a question of fact for the jury.

In the case of **Craig v Chambers, 17 Oh St 253** (1867) the law governing the implied liability of a surgeon is set forth in syllabus 1, as follows:

"1. The implied liability of a surgeon, retained to treat a case professionally, extends no further, in the absence of a special agreement, than that he will indemnify his patient against any injurious **consequences** resulting from his want of the proper degree of skill, care, or diligence, in the execution of his employment."

See also **Gillette v Tucker, 67 Oh St 106, Hier v Stites, 91 Oh St 127, Bowers v Santee, 99 Oh St 361.**

In the case of **Ault v Hall, 119 Oh St 422** (1928) in an action for malpractice by a patient against a surgeon, it is said:

"2. In an action for negligence, conformity to custom or usage is a matter proper to be submitted to the jury for its consideration in determining whether or not ordinary care has been exercised.

3. Customary methods or conduct do not

furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be guaged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised."

It has been urged by counsel for the defendant that even though the defendant failed to make the fluctuation test, that nevertheless the plaintiff failed to establish that there was, in fact, pus in the arm during the time that the defendant made the several visits to plaintiff. As to whether or not there was pus in the arm when defendant was in attendance, must be determined from all of the facts and circumstances.

The evidence shows that the infection spread and became progressively worse; that there was swelling in the hand and arm; that the plaintiff on Thursday fell into a state of coma; that she ran from then on a very high temperature and high pulse; that Dr. Jones, when called on Monday evening, six or seven hours after the last visit of defendant, immediately diagnosed the condition as one with pus in the arm and on the following day Dr. Jones removed a large amount of pus by making ten or twelve different incisions. Surely the finding of pus by Dr. Jones on the same day that defendant had treated plaintiff, was a circumstance to be considered by the jury, with other facts and circumstances to determine the existence or non-existence of pus.

Under these facts we believe that whether or not this infection would run its course and pus would form slowly or quickly; whether or not there was pus in the arm at noon on Monday when defendant last visited plaintiff, so that he could or should, in the exercise of ordinary care, have detected it; whether or not the fluctuation test was applied by defendant, whether or not the failure to detect and remove the pus, if it existed, was the proximate cause of the injuries alleged, were questions for the jury, together with all the other facts and circumstances, under proper instructions.

The case of **Jacob Laub Baking Co. v Middleton, 118 Oh St 106** (1928) sets forth the law with reference to the right to direct a verdict, as follows:

"2. When the proof of the essential facts put in issue and the reasonable inferences deducible therefrom are such that the jury, as fair-minded men, should reasonably arrive at but one conclusion, it is the duty of the trial court to direct a verdict in favor of the party which such proof sustains."

In the Laub case, it is said by Jones, J.:

"The power of the trial court to sustain motions for a directed verdict has uniformly and repeatedly been recognized by this court. More than seventy years ago this court declared in its syllabus:

'The courts of this state, in a proper case, have the power to take the evidence given by the plaintiff from the jury, and order a peremptory nonsuit.'

**'Ellis & Morton v Ohio Life Insurance & Trust Co., 4 Oh St 628,** 64 Am. Dec. 610. Ranney, J., delivering the opinion, said at pages 644-645:

'We cannot consider it necessary to enter at much length upon an examination of the power of the courts of this state, to order a peremptory nonsuit. * * * The law of every case, in whatever form presented, belongs to the court; and it is not only the right of the judge, but his solemn duty, to decide and apply it. * * * When all the evidence offered by the plaintiff has been given, and a motion for a nonsuit is interposed, a question of law is presented, whether the evidence before the jury tends to prove all the facts involved in the right of action, and put in issue by the pleadings.'

When the proof of the essential facts put in issue and the reasonable inferences deducible therefrom are such that the jury as fair-minded men, should reasonably arrive at but one conclusion therefrom, it is the duty of the trial court to direct a verdict in favor of the party which such proof sustains. If, on the other hand, the proof and inferences are such that fair-minded men could reasonably arrive at different conclusions therefrom, the facts in issue are triable to the jury. This rule of procedure, applying to directed verdicts, has been repeatedly recognized in this state. Among many cases, we cite

**'Foss-Schneider Brewing Co. v Ulland, 97 Oh St 210,** 119 NE 454, 4 A.L.R. 1098; **Vignola v N. Y. C. Rd. Co., 102 Oh St 194,** 131 NE 357; **Sobolovitz v Lubric Oil Co., 107 Oh St 204,** 140 NE 634; **Cleveland Akron Bag Co. v Jaite, 112 Oh St 506,** 148 NE 82.' "

In the instant case, there was a clear cut issue of fact on the question of whether or not the defendant made the fluctuation

test during his various visits, in order to determine whether or not pus was then present. Under all of the facts and circumstances there was some evidence from which the jury might find the existence of pus while defendant was still attending plaintiff. Applying the law as above set forth, it is our opinion that fair-minded men could reasonably arrive at different conclusions and that there were questions of fact for the jury.

Accordingly this cause is reversed for error of law in directing a verdict and remanded for further proceedings according to law.

LIEGHLEY, PJ. and LEVINE, J, concur in judgment.