GLADYS M. HEDMAN, Respondent, *v.* SECURITY TITLE AND GUARANTY COMPANY, Appellant.

Third Department, June 27, 1935.

*Chambers & Finn* [*Willard A. White* of counsel], for the appellant.

*McPhillips, Fitzgerald & McCarthy* [*Thomas J. McCarthy* and *James McPhillips* of counsel], for the respondent.

BLISS, J.   This action is brought to recover $1,200 and interest alleged to have been paid by plaintiff to defendant through Harry C. Heath, its district manager, in monthly installments of fifty dollars each on a contract for the purchase of guaranteed first mortgage certificates.   On March 20, 1931, plaintiff signed an installment subscription agreement by which she agreed to purchase $5,000 par value of the five and one-half per cent guaranteed first mortgage certificates of defendant and to pay for the same fifty dollars cash on the execution of the agreement and the balance in installments of fifty dollars.   The agreement authorized the defendant's representative to receive the first payment and provided that payments following the first one were to be made at the office of defendant at No. 1350 Broadway, New York city, " or any

branch office of the company, or at any bank or trust company that may be selected by the company to act as depositary." This installment subscription agreement had been negotiated for and presented to plaintiff by one H. C. Heath, of Saratoga Springs, who represented himself to be the district manager of defendant in charge of its Saratoga Springs branch office. It further provided that it should not be valid until accepted by defendant's duly authorized officer and also contained a statement that no agent or other person had permission to change or in any way alter the terms of the agreement or bind the defendant by any representation, oral or written, not contained therein. Plaintiff signed her name and placed thereon her address in the city of Glens Falls. Heath signed his name on the line designated for the " district manager " and the name of the branch was left blank. The original agreement was signed by both the plaintiff and Heath and a carbon duplicate delivered to the plaintiff. The original was then changed by some one, apparently Heath, by the erasure of plaintiff's address and inserting therein instead " care of H. C. Heath, 302 Nelson Ave., Saratoga Springs." The original date was erased and a new date " May 8–31 " inserted. The erasure is apparent from an examination of the original agreement and it is even possible to still read some of the portions which had been erased. This original agreement, together with the down payment of fifty dollars was accepted and retained by the defendant. There was also issued to plaintiff by defendant and sent to her by mail a receipt book giving the Saratoga Springs address and requesting the holder to make her monthly payments at 712 Chrysler Building, New York city. Heath collected the first installment from plaintiff and told her that he would make the collections himself until such time as there were enough subscribers in the territory to warrant the designation of some bank as a depositary. Plaintiff then continued to send by mail monthly payments of fifty dollars each to Heath together with the receipt book until she had paid in all $1,200. This receipt book was returned to her each time by mail until the last payment and when it did not come back after considerable delay plaintiff wrote direct to the defendant who informed her that Heath had not represented it for a considerable time. Apparently Heath had accepted plaintiff's payments, appropriated them to his own use and absconded.

Plaintiff first brought action against Heath and recovered a judgment against him which she has been unable to collect. She now brings this action and has had judgment after a verdict in her favor. It was the defendant's contention upon the trial that it had employed the Certificate Sales Corporation to sell its

mortgage certificates and that Heath was an employee of that corporation. The trial court submitted the issues to the jury for a general verdict. The appellant first objects to the court below having received in evidence the statements made by Heath to the plaintiff after the first payment by plaintiff, under the general rule that agency and the extent of an agent's authority may not be established by the declarations of the agent himself. But the defendant, by its acceptance of the installment subscription agreement executed in its behalf by Heath as district manager, placed itself in a position where it could not deny that he represented it as district manager. It furnished him with its printed forms and retained plaintiff's contract when executed by him as district manager. Its acceptance of the contract in this form was sufficient acknowledgment to the plaintiff of his authority. Being apparently clothed with the authority of a district manager the defendant was bound by Heath's representation to the plaintiff that he was authorized to make the collections himself until such time as there were enough subscribers in his territory to warrant the designation of a depositary. His was presumably all of the authority of a manager, limited only to the territory embraced within his district. Unless otherwise agreed, authority to manage a business includes authority to receive payment of sums of money due the principal. (American Law Institute, Restatement of the Law of Agency, § 73, subd. [e].) " The designation of ' manager ' implies general powers." (*Whipple* v. *Prudential Ins. Co.*, 222 N. Y. 46.) A manager of a branch office ordinarily has wider discretion than the home office manager. (American Law Institute, Restatement of the Law of Agency, § 34, subd. [d], comment e.) In the instant case payments were authorized to be made to any branch office of the company and presumably Heath was the district manager in charge of such a branch office. In any event, the plaintiff was justified in so believing. From the time of the acceptance by the defendant of the original agreement executed by Heath as its district manager, it was bound by such of his acts as were within the scope of such authority as the term " district manager " implies. The plaintiff had no knowledge of the fact that the original subscription agreement had been changed. This agreement was in the possession of the defendant and even a cursory examination of it would have revealed the alteration. By permitting its agents to give their own address as that of the purchaser it placed such agents in a position to perpetrate a fraud such as this. It apparently made no further inquiry from the time it received the down payment until about two years later, as to why plaintiff's payments were

not made to it. As to the alleged intermediary sales corporation plaintiff had no knowledge of its existence. The statements of Heath, the admissibility of which defendant contests, were not declarations of the alleged agent to establish the agency. The agency was established and these statements were competent to bind the principal as part of the *res gestæ* and were properly received.

Appellant further urges that there was no ratification by the defendant of the acts of Heath and, therefore, it cannot be bound by them. The plaintiff does not rely upon ratification but rather upon the estoppel of the defendant to deny the authority of Heath as its agent. There was, however, ample evidence to support a ratification. It accepted plaintiff's down payment and the executed contract accompanying it. By thus accepting the benefits of the contract executed by Heath as its district manager, defendant ratified the acts of Heath as its agent.

The provision on the printed agreement that no agent or other person had permission to change or in any way alter the terms of the agreement or bind the company by any representations, oral or written, not contained therein, applied only to the negotiations leading up to the execution of the agreement. The agreement as executed was strictly in accordance with the printed form. This provision did not prevent a district manager of defendant from modifying or waiving any of its terms after the execution.

The judgment and order should be affirmed, with costs.

HILL, P. J., RHODES, MCNAMEE and CRAPSER, JJ., concur.

Judgment and order affirmed, with costs.