Ᏻᴀᴍᴇs H. Fᴏʀʙᴇs Tᴇᴀ & Cᴏꜰꜰᴇᴇ Cᴏᴍᴘᴀɴʏ, Appellant, v. Bᴀʟᴛɪᴍᴏʀᴇ Bᴀɴᴋ, a Corporation.—139 S. W. (2d) 507.

Division Two, May 4, 1940.

*Ryland, Stinson, Mag & Thomson* and *Wright Conrad* for appellant.

*William S. Hogsett* and *Charles M. Blackmar* for respondent.

1154

TIPTON, J.—In the Circuit Court of Jackson County, Missouri, an action was filed against respondent for conversion of 174 checks made payable to appellant in an amount aggregating $41,675.80. At the close of the appellant's evidence, the trial court gave an instruction in the nature of a demurrer to the evidence. This appeal is to test the correctness of that ruling.

At the outset, we are met with respondent's motion to dismiss this appeal. We have examined the same and overruled the motion.

In reviewing the alleged error of the trial court in sustaining the demurrer at the close of appellant's evidence, we must consider as true all the evidence and all reasonable inferences therefrom tending to support appellant's theory of liability. Even so, we are of the opinion that the trial court's ruling was correct.

Briefly, the essential facts as developed by the evidence are as follows: That the appellant is a well-known importer of tea, coffee and spices and manufacturer of flavoring extracts, with its main office and plant in St. Louis, Missouri, and branch offices and warehouses at Kansas City and Omaha; that Fred Einhorn was the manager of its Kansas City branch office and warehouse; that by his contract of employment he received a substantial monthly salary and 40 per cent interest in the profits of the Kansas City branch; that there were twelve to fifteen employees in this office, five or six of whom were salesmen; that Einhorn had the power to employ and discharge them; that he had full authority in the handling of cus-

tomers' accounts and had full latitude in granting customers discounts for prompt payment of accounts and advertising allowances; that the Kansas City branch did a large business, which had been as large as $240,000 annually; that Einhorn would order merchandise from the St. Louis plant, and the merchandise would be shipped and charged to the Kansas City branch just as if it were shipped to some independent customer, and as the merchandise was resold the proceeds would be remitted to the St. Louis office where it would be credited, not to the customers who bought the merchandise, but to the Kansas City branch; that Mrs. Bertha E. Blumenthal was employed in 1920 or 1921 as cashier of the Kansas City office, five or six years before Einhorn became its manager; that she would deposit the receipts each day to the credit of appellant in the Commerce Trust Company of Kansas City and each day would mail a duplicate deposit slip to the home office, and if the receipts consisted of checks payable to appellant, she would stamp on the back of each check an endorsement for deposit in the Commerce Trust Company; that the only way a check would be honored was to have the check signed by two officers of the company in the St. Louis office; that the St. Louis office always knew its exact balance of its deposits in the Commerce Trust Company; that on November 8, 1932, Einhorn presented to respondent for deposit to his personal account a check payable to appellant from the Rutherford Chile Company; that the record does not disclose the conversation that took place between Einhorn and respondent when he offered this check for deposit, but two days later he procured from appellant's home office the following instrument:

"Jas. H. Forbes Tea & Coffee Company
"St. Louis—Omaha—Kansas City
"908 to 926 Clark Avenue
"Saint Louis
"November 10, 1932.

"To Whom It May Concern:

"This is to certify that Mr. Fred Einhorn, a resident of Kansas City, Mo., is authorized to receive payment of accounts due the Jas. H. Forbes Tea & Coffee Co., a Missouri corporation, with headquarters in St. Louis, Mo., and a branch office and warehouse at 302 Delaware St., Kansas City, Mo.

"It is further certified that Mr. Fred Einhorn is the Manager of the foregoing company's branch office and warehouse in Kansas City, Mo.

"Jas. H. Forbes Tea & Coffee Co.
"Herbert H. Droste,
"Secy-Treas.

"Before me, a notary public in and for the City of St. Louis, on this day personally appeared Herbert H. Droste, who being by me

duly sworn, upon oath says he is Secretary and Treasurer of the Jas. H. Forbes Tea & Coffee Co., a Missouri corporation.

"Herbert H. Droste.

"Subscribed and sworn to before me this 10th day of November, 1932.

"Hilma A. Barthel,

" (Seal)                                                                 Notary Public.

"My commission expires January 7, 1935."

As time went on, Einhorn deposited 174 checks which totaled in amount $41,675.80, and at various times sent his personal checks drawn on respondent bank aggregating at least $10,648.07 to appellant. From time to time, telegrams and letters were sent Einhorn urging him to "send us a big check" and one letter stated that "if you have any money in the bank please send it down." The appellant required a $20,000 fidelity bond on Einhorn to protect it against loss by forgery, theft, embezzlement, misappropriation, wrongful abstraction or willful misapplication of appellant's funds. The salesmen of the Kansas City branch were required to give only a $1000 fidelity bond. After the discovery of Einhorn's shortage, appellant collected $20,000 from the bonding company for "misappropriation of funds" belonging to appellant. The officers of the home office audited the Kansas City branch semi-annually, and did not discover Einhorn's shortage until August 27, 1935. He was in St. Louis on that date to explain why collections were slow and then stated he was short in his accounts. The testimony was that Einhorn's reputation was of the highest and that he was the type of man whose statements would inspire confidence and be accepted as true by anyone who knew him.

There is no evidence that respondent did not act in good faith or that it received any benefit from Einhorn's acts.

The rule is well settled that "a manager of a company possesses the most general and inclusive powers possessed by any officers of a corporation, and that unless his authority is specifically restricted it is coextensive with the powers of the corporation itself, and he has authority to do any act in its behalf which is usual and necessary in the ordinary course of the company's business, or which he is held out to the public as having authority to do. The fact that he occupies the position of manager implies his authority to do anything that the corporation itself may do, so long as the act done pertains to the ordinary business of the corporation. [14A C. J., p. 359, sec. 2221; Robinson v. Moark-Nemo Consolidated Mining Co., 178 Mo. App. 531, 539, 163 S. W. 885; Concrete & Steel Const. Co. v. National Asphalt Refining Co. (Mo. App.), 2 S. W. (2d) 157.]" Buffalo Trust Co. v. Prod. Exch., 224 Mo. App. 199, l. c. 208, 23 S. W. (2d) 644. [See also Gate City Building & Loan Assn. v. National Bank of Commerce, 126 Mo. 82, 28 S. W. 633, 47 Am. St. Rep. 633, 27 L. R.

A. 401; Farm & Home Savings & Loan Assn. of Mo. v. Stubbs, 231 Mo. App. 87, 98 S. W. (2d) 320; Rosenbaum v. Gilliam, 101 Mo. App. 126, 74 S. W. 507.]

The only conclusion that can be drawn from the evidence is that Einhorn was appellant's manager of the Kansas City branch. Appellant executed an instrument addressed To Whom It May Concern, stating that Fred Einhorn was its manager with power "to receive payment of accounts," not merely to receive collections. This instrument was given to respondent two days after Einhorn made the deposit with the bank. Moreover, the oral evidence shows that Einhorn, and no one else, was the manager during the time in question. He had authority to employ and discharge the employees of the Kansas City Branch. He had authority to arrange for discounts with its customers; to allow customers credit for advertising; tho settle accounts and to receive payment of accounts. As previously stated, the Kansas City customers of appellant dealt only with that branch office; merchandise was sent to it and then later sold to the customers, the same as if it had been an independent jobber. Moreover, appellant's president wired Einhorn on several occasions to send them "a big check" which was done by Einhorn's sending them his personal check drawn on respondent bank. He could not have meant a check on the Commerce Trust Company because the St. Louis office knew exactly the amount on deposit in that bank, and only the officers of the home office had authority to sign checks on that bank. There is evidence in the record that Einhorn had endorsed appellant's checks long before he opened an account in respondent bank.

Where a corporation puts the agent forward as a general agent or manager or places him in a position where others are justified in the belief that his powers are general, the restrictions that may be imposed privately on the agent are immaterial, except as between the corporation and the agent, and cannot affect the rights or remedies of third parties dealing with the agent who have no knowledge of such restrictions. [Southwest Mo. Elec. Ry. Co. v. Mo. Pac. Ry. Co., 110 Mo. App. 300, 85 S. W. 966; Farm & Home Sav. & Loan Assn. v. Stubbs, supra; Rosenbaum v. Gilliam, supra.]

We therefore hold that the evidence conclusively shows that Einhorn had the apparent, if not the actual, authority to endorse the checks in question, and the trial court correctly ruled the demurrer to the evidence.

We are not unmindful of the rule that the power given a mere agent to collect accounts for his principal does not give the agent authority to endorse checks, but those cases relied upon by appellant sustaining this rule are not in point because Einhorn was the manager and not a mere salesman with power to collect.

From what we have said, it follows the judgment should be affirmed It is so ordered. All concur.