## COEN v. AMERICAN SURETY CO. OF NEW YORK.

### No. 11881.

Circuit Court of Appeals, Eighth Circuit.
June 9, 1941.

Rehearing Denied July 3, 1941.

394

GARDNER, Circuit Judge, dissenting.

———◇———

R. Carter Tucker and Charles B. Turney, both of Kansas City, Mo. (Harding, Murphy & Tucker, of Kansas City, Mo., on the brief), for appellant.

Thomas E. Deacy, of Kansas City, Mo. (M. J. Henderson, Ben W. Swofford, and

Henderson, Deacy, Henderson & Swofford, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment for the defendant in an action brought by appellant on a contract of guaranty in the form of a bond. The case was tried to a jury, and the judgment was rendered upon a verdict directed by the court at the conclusion of the evidence. Jurisdiction is based upon diversity of citizenship.

In his petition Coen, the plaintiff, alleged that on or about March 28, 1935, he purchased of F. E. Colvin a promissory note for the principal amount of $3,500, dated March 14, 1935, payable in 90 days to Colvin or assigns, and made by Gem City Finance Company, Inc.; and that as a part of the consideration paid for the note, Colvin assigned to him a "guaranty bond", also dated March 14, 1935, executed by the defendant, American Surety Company of New York. By the terms of the bond the defendant guaranteed the payment of the note when due to Colvin or his assigns and agreed that if it was not so paid the defendant would pay it with costs of collection. Timely demand and refusal to pay were alleged, and judgment was demanded.

The defendant filed a verified answer alleging that both the note and the bond were forged instruments, and denying liability. The plaintiff's reply denied the allegations of the answer and asserted that the defendant is estopped to deny the genuineness and binding force of the bond. The facts set out in the reply were denied under oath by the defendant.

Upon the trial the plaintiff introduced evidence tending to show that at the time of the transactions out of which the dispute arises Coen, the plaintiff, occupied an office in the Commerce Building in Kansas City, Missouri. On March 5, 1935, F. E. Colvin and W. B. DeArmand came to the office and solicited Coen to purchase a note secured by tax bills in Henderson County, North Carolina. After consulting his attorney, Coen declined to purchase the note. On a third or fourth visit to the office, Colvin and DeArmand brought with them a Mr. Bowers, whom they introduced as a member of the Gem City Finance Company of North Carolina, the maker of the note which it was proposed to sell to Coen.

They presented a form of bond or guaranty, and asked if he would be willing to buy the note thus guarantied. Coen took the form of bond to his attorney who made some changes in it, after which Coen told them that if they could arrange with the American Surety Company to give the bond he would consider the purchase of the note. Bowers said that he was a personal friend of a Mr. Nye, an agent of the defendant; that through such friendship this bond could be obtained; and that he would have no trouble in getting it down where Nye was located.

About ten days later the negotiators returned with the note for $3,500 purporting to be signed on the 14th day of March, 1935, by "Gem City Finance Company, Inc. By W. Erdman Love, President", attested by "J. B. Bowers, Secretary and Treasure[r]", and bearing the purported seal of the corporation. They had also the alleged bond dated March 14, 1935, purporting to be signed by "American Surety Company of New York, N. Y. By L. Bert Nye, General Agent and Atty-in-Fact." It bore the purported seal of the company and was typewritten on paper at the top of which were printed the words "American Surety Company of New York, N. Y."

Coen informed them that before closing the deal he would require a confirmation of the bond from the home office of the company in New York, and they agreed to procure such confirmation for him.

As a further precaution, Coen, on March 15, 1935, dispatched the following telegram from Kansas City:

"American Surety Company of New York,
"100 Broadway,
"New York City.
"Has Bert Nye your company power to execute guarantee bond and where. Wire Collect Western Union.
"W. F. Coen."

On the next day he received in reply the following telegram dated March 16, 1935:

"W. F. Coen—
"Commerce Bldg.
"L. Bert Nye Is Our Manager Washington D. C. And Has Power To Execute Bonds Within Certain Limitations. If Further Information Desired Suggest You See W. R. Evans Our Manager Your City—
"American Surety Company Of New York
"H. A. Reiss."

Upon receipt of this telegram, Coen went to see the W. R. Evans named in the telegram with whom he was well acquainted. He showed Evans the telegram and told him the story of his negotiations with Colvin and DeArmand. Coen testified that at that time Evans said: "I know Bert Nye's signature and when that bond arrives in Kansas City I can tell you beyond any doubt whatsoever as to whether or not it is a genuine bond." Coen told Evans that they were having the bond confirmed and that when the confirmation arrived he wanted Evans to go with him to the First National Bank and see the letter and tell him whether it was genuine and all right in every respect; that he was depending entirely upon the guaranty of the American Surety Company and that he wanted Evans to tell him whether it was "O.K." or not.

Meanwhile on March 21, 1935, Colvin, DeArmand and Coen placed the note, the bond and a cashier's check for $3,000 belonging to Coen in escrow with the First National Bank with a written escrow agreement providing that upon the receipt of confirmation of the bond satisfactory to Coen the bank should issue a draft to Bowers for $2,500, another to DeArmand for $500, and deliver the note and bond to Coen.

About March 28, 1935, Coen received by air mail the following letter of confirmation, written upon the purported stationery of defendant, a copy of which was received on the same day by the bank:

"Mr. W. F. Coen,
 "Commerce Bank Building.
 "Kansas City Mo.
"Dear Sir:
 "We are in receipt of application and copy of bond from our Asheville North Carolina office, execute by this Company, through our Southern Manager, Mr. L. Bert Nye of Washington D. C. on the 14th. day of March 1935. In behalf of the Gem City Finance Company Incorporated, of North Carolina for Thirty-Five Hundred Dollars, payable to Mr. F. E., Colvin or his assigns of Kansas City Mo.
 "We wish to advise you that a record of this bond has been filed with this office and the bond is confirmed and in proper form.
    "Yours very truly.
        "H. A. Reiss
        "H. A. Reiss
    "Asst. Superintendent of Agencies."
 "HB/nh

"Copy to
 "W. B. DeArmonds. Walnut St. Kansas City Mo.
 "First National Bank. Kansas City Mo.
 "F. W. Colvin. Walnut St. Kansas City Mo.
 "S. L. Hollender. Asheville N. Car."

Coen testified that upon receipt of the letter he took Evans to the bank where a Mr. Riley, an officer of the bank, showed him the bond and the letter of confirmation. Upon examining the documents, Evans said: "I can't say positively that that letter was signed by Mr. Reiss but it was signed by some of the boys in authority and there isn't any doubt but what it comes from our office in New York City and it is O.K." Evans also read the bond carefully and said: "That is O.K. The guaranty is all right. This deal is just like getting money on a barrel head."

The conversation at the bank, as testified to by Coen, was corroborated by Mr. Riley.

After this conversation was concluded the transaction was completed in accordance with the terms of the escrow agreement; the money was paid over to Bowers and DeArmand, and Coen received the note and bond assigned to him by Colvin.

The genuineness of the telegrams of March 15th and 16th was admitted by the defendant. It was also admitted that on March 16, 1935, W. R. Evans was the manager of defendant's branch office at Kansas City and that on March 14, 1935, L. Bert Nye was manager of its branch office at Washington, D. C.

When plaintiff rested, the court upon motion of counsel for defendant struck the testimony of Coen and Riley as to what Evans said at the bank in reference to the genuineness of the letter of confirmation and of the bond, on the ground that the testimony was hearsay and that the statements of Evans were not binding upon the defendant because not within the scope of his employment.

The defendant introduced overwhelming evidence that the purported letter of confirmation of March 27, 1935, was a forgery; that the alleged bond was a forgery; that the note was a forgery; that the purported maker of the note, Gem City Finance Company, Inc., was in receivership since June, 1931, and that its certificate of incorporation was cancelled by the state of North Carolina on February 1, 1932.

The deposition of L. Bert Nye was read in evidence on behalf of the defendant. Nye testified that the bond was not signed by him and that he never was a "general agent" of the defendant. He made a specimen of his true signature on a paper which was introduced in evidence.

Defendant's motion for a directed verdict made at the close of the testimony was sustained on the ground that the evidence failed to establish that the alleged bond was executed, confirmed, ratified or approved by the defendant.

The order of the court directing a verdict for the defendant is assailed by the plaintiff as erroneous on two grounds:

First, it is contended that the court erred because the evidence is sufficient to sustain a verdict that the bond was actually executed by defendant and is genuine; and

Second, that there was error because the defendant is estopped to deny the validity and proper execution of the bond.

■■ The first contention presents the question whether or not as a matter of law there was a conflict in the evidence on the issue of the actual execution of the bond, and also whether there is any substantial evidence to support the burden of proof assumed by plaintiff. In determining these questions we must be guided by certain well-established rules: (1) All facts which the plaintiff's evidence reasonably tends to prove and all inferences which may reasonably be drawn therefrom must be resolved in plaintiff's favor, Nielsen v. Richman, 8 Cir., 114 F.2d 343, 345; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; and (2) where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is the court should give a peremptory instruction to the jury, Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; People's Savings Bank v. Bates, 120 U.S. 556, 562, 7 S.Ct. 679, 30 L.Ed. 754; Southern Pacific Company v. Pool, 160 U.S. 438, 440, 16 S.Ct. 338, 40 L.Ed. 485; Cleveland-Akron Bag Co. v. Jaite, 112 Ohio St. 506, 148 N.E. 82, 84, 85.

Plaintiff's first proposition is based upon the contention that (1) the declarations of W. R. Evans and (2) the specimen of L. Bert Nye's signature introduced in evidence by defendant constitute sufficient evidence to sustain a verdict that the bond is genuine and was fully and actually executed by the defendant.

■ The answer having put in issue the execution of the bond, the burden was upon the plaintiff to establish its execution by a preponderance of the evidence, and in sustaining this burden the plaintiff cannot be aided by presumption, but must establish every element of his case by relevant evidence. This same burden would have been upon him had the case been tried in the state court of Missouri, since the denial of the execution of the bond was by verified answer. Revised Statutes of Missouri 1929, § 965, Mo.St.Ann. § 965, p. 1235; Meredith v. Brock, 322 Mo. 869, 17 S.W.2d 345; German-American Bank v. Barnes, Mo.App., 185 S.W. 1194. Under these authorities the execution of a written contract includes three acts: (1) Signing and (2) unconditional delivery by the promisor and (3) acceptance by the promisee.

On the question of the execution of the bond on behalf of the defendant, the admissibility of the declarations of Evans must be considered separately from the issue of estoppel. On the issue of estoppel it is assumed that Evans was mistaken, while on the question of the execution of the bond plaintiff insists that Evans' opinion has the same probative value as that of any opinion witness. On this point the question is whether or not the bond was actually executed, not whether defendant is estopped to deny its execution.

■ When considered only in connection with the execution of the bond Evans' declarations were mere conclusions and clearly hearsay, and they were properly stricken on that ground. He was not produced as a witness. He did not testify under oath, and there was no opportunity to cross-examine him. The conversation at the bank was not in the presence of the defendant nor of any of its representatives other than Evans.

■ Further, if it be assumed that his statement be admissible as an opinion, which we find it is not, it cannot be construed as establishing prima facie the execution of the bond. He could not express an opinion upon matters as to which he had no knowledge and which were not submitted to him. He was shown only the bond and the letter allegedly confirming it. He said that he could not say that the letter was signed by Reiss. He was not given the history of the bond. He was not told whether it had been delivered to Colvin or accepted by him. His statement, there-

fore, cannot be construed as an opinion upon two of the essential elements of the execution of the bond, namely, its delivery and its acceptance. His opinion, if accepted, could be related only to the signature of Nye, and proof of the signature was not sufficient to sustain the burden resting upon the plaintiff.

The only other evidence in the record which it is claimed should be considered as supporting the contention that the bond was actually signed on behalf of the defendant is the specimen of Nye's signature introduced by defendant in connection with Nye's deposition. At the time the deposition was read in evidence there was no relevant evidence in the record to sustain the claim that the bond had been executed by defendant. The bond had been admitted in evidence, probably on the theory that it was admissible under the issue of estoppel. It was not admissible as evidence of its proper execution. Plaintiff's argument is that the specimen of Nye's signature having been brought into the record by the defendant it was for the jury to compare it with the purported signature on the bond and to determine whether or not the bond was signed by Nye. But on the issue of the actual execution of the bond the forged signature was not properly before the jury for comparison. In any event no prejudice is shown by the order striking Evans' declarations for the reason, as pointed out in the following paragraph, that proof of Nye's signature, if admitted, was not sufficient of itself to require the submission of the actual execution of the bond to the jury.

The contention that the evidence required the submission of the question of the actual execution of the bond to the jury fails also to take into consideration that there was no proof to show its delivery and acceptance. In his petition the plaintiff alleges with reference to the bond sued upon that it was "executed by the defendant, American Surety Company." This allegation was denied under oath by the defendant. The burden was therefore upon the plaintiff to prove by relevant evidence that the bond was executed, which, under the applicable Missouri law, means not only that it was signed, but that it was unconditionally delivered to the promisee. Meredith v. Brock, supra. F. E. Colvin was the promisee named in the bond, and there is not a scintilla of evidence in the record to the effect that the bond was ever delivered

to him by the defendant or by any one purporting to act for it. Any presumption of its delivery which might otherwise have aided the plaintiff is destroyed by the statute and cannot be assumed by the court. German-American Bank v. Barnes, supra.

We hold that there was no relevant evidence to support plaintiff's contention that the issue of the actual execution of the bond should have been submitted to the jury.

Plaintiff's second proposition is that assuming the bond was forged the defendant is estopped to deny its binding force and that it was actually executed. The fact upon which the theory of estoppel is based is the declaration of W. R. Evans, made upon examining the forged bond before Coen parted with his money, that: "That [bond] is O.K. The guaranty is all right. This deal is just like getting money on a barrel head"; and in reference to the letter of confirmation: "I can't say positively that that letter was signed by Mr. Reiss, but it was signed by some of the boys in authority and there isn't any doubt but what it comes from our office in New York City and is O.K."

The essential elements of an equitable estoppel stated by the Supreme Court of Missouri in Blodgett v. Perry, 97 Mo. 263, 10 S.W. 891, 892, 10 Am.St.Rep. 307, and in similar cases, are: "(1) There must have been a false representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; (5) the other party must have been induced to act upon it." See also Bigelow, Estoppel, 3d Ed., 484; Sanders v. Chartrand, 158 Mo. 352, 59 S.W. 95, 97; Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S. W. 359, 363. In the last cited case the court said: "Estoppel must be pleaded with particularity and certainty. * * * nothing can be supplied by inference or intendment, and where there is ground for inference or intendment, it will be against and not in favor of the estoppel. * * * the burden is on the party who sets up the estoppel to make out the facts on which it rests."

There was evidence from which the jury might have found the existence of the 1st, 3rd, 4th and 5th of the elements of estoppel enumerated above.

On this issue there remain then only two questions: (1) Were the defendant and Evans shown to have had knowledge of the facts as required by the 2nd essential? And (2) Did Evans have authority to speak for the defendant as to the validity of the bond?

The burden was upon plaintiff to establish the affirmative of both these questions. Fidelity Nat. Bank & Trust Co. v. Tootle-Campbell Dry Goods Co., 293 Mo. 194, 238 S.W. 474. At the time the statements were made there is no showing that the defendant or any of its officers or agents, except Evans, had any knowledge of the existence of the forged bond and letter. The only information which Evans had was that communicated to him by Coen. Evans was shown the bond and letter but he was given no information in respect of its execution or history. He claimed only to be familiar with the signature of Nye whose name appeared upon the bond as general agent and attorney in fact. He was not told whether the defendant received any consideration for the bond. The full extent of Evans' knowledge of the facts was known to Coen. Under the rules of law stated above there can be no inference that Evans knew more than the record discloses. Coen, therefore, was not justified in relying upon the statement that the bond was "all right". He knew that Evans did not know whether the bond had been executed on behalf of the defendant by signing, delivery and acceptance.

The final question is whether Evans had authority to speak for the defendant in this particular transaction. The plaintiff contends that Evans' authority is established by the evidence in two ways: (1) Expressly by defendant's telegram to plaintiff of March 16, 1935; and (2) impliedly by the admission that at the time of the transaction Evans was the defendant's manager of its branch office at Kansas City, Missouri. The validity of this contention was presented to the court as a matter of law by the motion to strike Coen's and Riley's testimony and by the motion for a directed verdict.

In considering the argument that defendant's telegram of March 16th expressly authorized Coen to assume that Evans had power to represent and bind the defendant in this transaction, Coen's telegram of March 15th and the defendant's reply of the 16th must be construed together. Plaintiff contends (1) that this correspondence authorized him to believe that Evans had power to pass upon the *authority* of Nye, a branch manager in a remote territory, and (2) that Evans' authority was not limited to the business of defendant in the Kansas City territory but was coextensive with its business generally.

We do not think these contentions are warranted by the language of the telegrams. Coen inquired on March 15th, "Has Bert Nye your company power to execute guarantee bond and where?" It will be observed that no mention is made of the transaction which Coen was considering, nor that he was even considering a bond already purporting to be executed by Nye. The inquiry asked only as to Nye's "power" to execute a "guarantee bond" and "where", that is, the territory in which he had power to execute such a bond. The answer of the defendant must be considered as an answer only to this compound question. The first sentence of the reply answers the two questions as definitely as could be expected in a telegram. It reads: "L. Bert Nye is our manager Washington D. C. and has power to execute bonds within certain limitations." The telegram continued: "If further information desired suggest you see W. R. Evans our manager your city." Nothing in this telegram expressly represents that Evans is authorized to pass upon the validity of a bond executed by Nye. If it warrants any conclusion beyond an answer to Coen's question, it must be by implication and inference. As already shown, under the law of Missouri estoppel cannot be shown by inference. It must be established by pertinent facts. It cannot be said that the telegram even implies that Evans had authority to do more than furnish "further information", if desired, in connection with the questions propounded in Coen's telegram. The furnishing of such information would not include authority more extensive than necessary to answer that question, and certainly not an authority to "pass upon" the validity of a bond of which the defendant had no knowledge and which purported to have been issued by an agency in Washington, D. C.

Plaintiff's last contention is that Evans' specific authority to pass upon the validity of the bond is implied in the admitted fact that he was the branch manager of defendant's Kansas City office. The burden was upon plaintiff to show that the representation made by Evans was within the scope of his powers and duties. There

is no evidence in the record showing Evans' actual authority nor the nature of his duties on behalf of the defendant from which his authority could be implied. The plaintiff's contention depends wholly upon the general authority of the agent of a corporation implied as a matter of law in the title Branch Manager.

It is shown by the undisputed evidence that the defendant transacts business over an extensive territory; that its principal office and the home of its general officers are in New York city, and that it has established in various cities of the United States offices for the transaction of business arising in their respective localities, which offices are under the immediate supervision of agents called branch managers. Where a corporation operates upon such a plan the general rules in respect of the implied authority of its managers by virtue of their titles are:

1. "In the absence of special restrictions, the general manager of a corporation has authority, coextensive with the powers of the board of directors and of the corporation itself, to bind the corporation by usual and necessary acts in the ordinary course of its business." 19 C.J.S., Corporations, p. 469, § 1002.

2. "Where one is intrusted with the management of a particular branch of a corporation's business, his authority does not extend beyond such contracts and acts as are incident to the management of that particular branch." 19 C.J.S., Corporations, p. 459, § 996; Massachusetts Bonding & Ins. Co. v. Trans-American Freight Lines, 286 Mich. 179, 281 N.W. 584, 586, and authorities cited.

It is the contention of the plaintiff that in Missouri the first rule is applicable to all persons bearing either the title general manager or branch manager, and that the restrictions in rule two do not obtain in that state. In support of this contention plaintiff relies almost exclusively upon the decision of the Supreme Court of Missouri in the case of James H. Forbes Tea & Coffee Co. v. Baltimore Bank, 345 Mo. 1151, 139 S.W.2d 507, 509. In that case the liability of the defendant bank depended upon the authority of a branch manager of the plaintiff to endorse checks payable to the plaintiff and to deposit them in his personal account in the bank. Basing its conclusion upon particular facts and the course of conduct of the plaintiff the court held that: "Einhorn [the branch manager] had the apparent, if not the actual, authority to endorse the checks." In the course of the opinion there are general expressions stating the rule set out above applicable to the apparent or implied powers of a general agent. It is obvious that the nature of the question concerning the implied authority of a branch manager which has arisen in this case was not particularly called to the attention of the court in that case. The case cannot, therefore, be relied upon as an authority in this case where the exact point is in issue. Had the court's attention been directed to the distinction it would no doubt have been more precise in its statements. It is a settled rule "that general expressions in an opinion, which are not essential to dispose of a case, are not permitted to control the judgment in subsequent suits." Harriman v. Northern Securities Co., 197 U.S. 244, 291, 25 S.Ct. 493, 502, 49 L.Ed. 739; United States ex rel. Johnston v. County of Clark, 96 U.S. 211, 218, 24 L.Ed. 628; Carroll v. Lessee of Carroll, 16 How. 275, 287, 14 L.Ed. 936; Cohens v. Virginia, 6 Wheat. 264, 399, 5 L.Ed. 257. We are convinced of the truth of the foregoing observations in respect to the opinion in the Baltimore Bank case, supra, for the reason that the courts of Missouri have consistently, in so far as our investigation has disclosed and in so far as we are aided by the briefs, applied the restricted second rule, supra, in determining the implied scope of the authority of subordinate agents and branch managers or agents in charge of particular units of their principals' business. Kelso v. Lincoln Nat. Life Ins. Co., 227 Mo.App. 184, 51 S.W.2d 203; Punton v. United States Life Ins. Co., 213 Mo.App. 49, 245 S.W. 1080; Bradley-Metcalf Co. v. Tootle-Campbell Dry Goods Co., Mo.App., 180 S.W. 389; Sanders v. Chartrand, 158 Mo. 352, 59 S.W. 95, 98; Skene v. Union Casualty & Surety Company, 91 Mo.App. 120. Some of the cases from other states, cited and relied upon by plaintiff, recognize such restrictions upon the implied authority of a branch manager. Whipple v. Prudential Ins. Co. of America, 222 N.Y. 39, 118 N.E. 211; Hedman v. Security Title & Guaranty Co., 245 App.Div. 224, 281 N.Y.S. 565; Kelly v. Newark Shoe Stores Co., 190 N.C. 406, 130 S.E. 32, 34; S. H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757.

This court very recently was called upon to determine the scope of the implied authority of an assistant branch manager

for the Metropolitan Life Insurance Company under the Missouri law. The decisions of the Missouri courts, including the Baltimore Bank case, supra, were reviewed in an opinion written for the court by Judge Collet, a Missouri lawyer and judge, in Gosney v. Metropolitan Life Ins. Co., 8 Cir., 114 F.2d 649, 653. In that case it was contended, as it is here, that when the fact was established that the actor was the company's Assistant Manager of its branch office "the presumption arose that his authority was general and not special", and that the burden was upon the party asserting restrictions upon his authority to prove those restrictions. After examining the authorities the conclusion was reached that the implied authority of such an agent is general "only in respect to the business with which the agency is concerned", that is, the business pertaining to the duties to be performed at the branch office. The court found that the distinction referred to supra between the scope of the implied authority of a general manager and a branch manager obtains in Missouri, as it does elsewhere. Our reexamination of the authorities satisfies us that the conclusion reached in the Gosney case is correct.

Applying that rule to the instant case, Evans was not clothed with implied power to "pass upon" the validity of bonds issued by defendant's branch office at Washington, D. C. Such an act was not within the scope of his implied duties as branch manager of defendant's Kansas City office.

Having reviewed all the alleged errors of the court, we find that the defendant's motion for a directed verdict was properly sustained. The judgment appealed from is, therefore, affirmed.

GARDNER, Circuit Judge (dissenting).

I am of the view that the court should not have directed a verdict for defendant but should have sent the case to the jury with proper instructions. It will not be necessary to repeat the evidence as outlined in the majority opinion. I think the majority opinion in effect assumes that the bond was a forgery. That, however, was an issue in the case and there was no presumption that it was a forgery. This was an affirmative defense set up in the defendant's answer, and the burden of proof as to that issue was upon it. Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The bond and the note were in the possession and under the control of Colvin, in whose favor the bond purported to have been issued and to whom the note was made payable. He placed these instruments in escrow. Evidence of the possession of Colvin was not only evidence of the delivery of the instruments but of his acceptance of them. It is not necessary that delivery be evidenced in any particular or prescribed manner. The fact that a Missouri statute shifts the burden of proof to the plaintiff, where the defendant's verified answer denies execution of a written document, does not change the rule in Federal court. We are bound to follow the rules of civil procedure unless they infringe some substantive law. Fort Dodge Hotel Company v. Bartelt, 8 Cir., 119 F.2d 253. The instruments appeared to be regular upon their face. The bond purported to be executed under the seal of the defendant company, and it came from the possession of the party in whose favor it was drawn. The telegram from the company to the plaintiff in answer to his inquiry as to the authority of Nye to execute bonds, not only advised plaintiff that Nye had such authority within certain limitations, but referred plaintiff to Evans for "further information." Evans is not referred to in this telegram as a branch manager but as "our manager your city." As manager he was defendant's representative in such transactions as took place within his jurisdiction. In other words, so far as such transactions were concerned, the plaintiff had a right to treat him as the defendant. When plaintiff, therefore, went to Evans for "further information," he naturally had a right to assume that he spoke with authority concerning this bond transaction. Evans is not to be considered as an expert witness giving an opinion, but as an officer making binding admissions. He told plaintiff that the bond was signed by defendant's authorized agent and that it represented its binding obligation. Evans was the only officer of the defendant participating in this transaction in Kansas City. What he said about this transaction was admissible against the defendant, and hence the testimony of the plaintiff and of Mr. Riley should not have been stricken. This testimony established, prima facie at least, the execution of the bond by an authorized agent of the defendant.

The Supreme Court of Missouri, in James H. Forbes Tea & Coffee Co. v. Baltimore

Bank, 345 Mo. 1151, 139 S.W.2d 507, 509, said:

"The rule is well settled that 'a manager of a company possesses the most general and inclusive powers possessed by any officer of a corporation, and that unless his authority is specifically restricted it is coextensive with the powers of the corporation itself, and he has authority to do any act in its behalf which is usual and necessary in the ordinary course of the company's business, or which he is held out to the public as having authority to do. The fact that he occupies the position of manager implies his authority to do anything that the corporation itself may do, so long as the act done pertains to the ordinary business of the corporation.' * * *

"Where a corporation puts the agent forward as a general agent or manager or places him in a position where others are justified in the belief that his powers are general, the restrictions that may be imposed privately on the agent are immaterial, except as between the corporation and the agent, and cannot affect the rights or remedies of third parties dealing with the agent who have no knowledge of such restrictions."

In the Forbes case, the manager was the manager of a branch office. Here, the manager was referred to by the company as "our manager." I think, therefore, it could not properly be said as a matter of law that there was no evidence of the execution and delivery of the note and bond.

Was there evidence from which the jury might properly have found the defendant estopped to deny the actual execution of the bond? The plaintiff was referred to Evans as the defendant's manager in Kansas City. Plaintiff relied upon what Evans told him and acted upon his advice with the knowledge of Evans and therefore of the company that he was so acting. There is nothing to indicate that the plaintiff had any knowledge as to limitations of the authority of Evans as defendant's manager. It is elementary that where a principal refers another to a third person for information, the principal will be bound by the statements made by such third person. Quirk v. Bedal, 42 Idaho 567, 248 P. 447; Oliver v. Huckins, Tex.Civ.App., 244 S.W. 625. Evans was not only the person referred to by the defendant who might furnish further information relative to the transaction here involved, but he was confessedly the manager of the defendant and in that capacity represented it. Defendant should not now be permitted to say that he was without specific authority to speak for it. If we assume that the parties were equally innocent, still it was the conduct of Evans which brought about plaintiff's loss, and under such circumstances the defendant for whom he acted, other things being equal, should bear the loss.

There was another ground on which I think the case should have gone to the jury. Defendant, for the purpose of comparison, put in evidence the genuine signature of' its manager Nye. Section 638, Title 28 U. S.C.A. provides that: "In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness."

Did this genuine signature tend to prove or did it tend to disprove that the purported signature of Nye attached to the bond was spurious? The jury on examining this signature might have concluded that the signature to the bond was the genuine signature of Nye. In any event, it seems to me it was for the jury to say. Broadway Bank v. Stroud, Mo.App., 51 S.W.2d 555; State v. Pace, 269 Mo. 681, 192 S.W. 428, 430. In the last cited case, the Supreme Court of Missouri, in discussing a statute, Mo.St.Ann. § 1751, p. 4020, somewhat similar to the Federal statute, among other things, said: "It appears from the wording of the statute that, while the writing thus offered must be 'proved to the satisfaction of the judge to be genuine,' the jury is not necessarily bound by the judge's conclusion upon the matter, for 'such writing and the evidence respecting the same may be submitted to the court and jury,' etc. This, it seems, modifies the old rule that the jury could not pass upon any collateral issue concerning such writings."

It will be observed that the Federal statute specifically provides that the proved handwriting "shall be competent evidence as a basis for comparison by witnesses, or by the jury."

In Broadway Bank v. Stroud, supra [51 S.W.2d 556], the Court of Appeals of Missouri said: "We think the court could have refused the introduction of the note until this or some other evidence of the execution

was offered, but, since the note had been offered, and been admitted in evidence by the court, we think it was error to refuse the submission to the jury of the genuine signatures of the defendants; that is, the signatures upon their answer which they would be estopped to deny were genuine, so that the jury could examine by comparison with the signature on the note."

The action here was based upon the bond and not upon the note and the genuine signature of Nye was in evidence and could not be disregarded even though it was introduced by the defendant.

I am of the view that the judgment appealed from should be reversed and the cause remanded with directions to grant a new trial.